KELLEY vs. SCHUPP and another.

*February 20 — March 18, 1884.*

EVIDENCE: COURT AND JURY. *(1) Admission by assignor binding on assignee. (3) Collateral evidence. (4) Payment to avoid lien not admission of primary liability. (5) Negative testimony.*
STATUTE OF FRAUDS. *(2) Promise to pay debt of another: Benefit to promisor.*

1. In an action by the assignee of a claim for services rendered, a witness for the plaintiff testified to a certain promise. of the defendants, made to the assignor of the claim, to pay for such services; but the assignor himself testified that no such promise was made. *Held,* that such admission by the assignor was binding upon the assignee, and the question as to such promise was properly taken from the jury.

2. S. & T., having a permit to cut certain timber, contracted with M. that he should cut the same and deliver the logs to them, at a certain place, free from all liens for labor, they agreeing, on their part, to advance $1,000 to be used by M. in the business, to receive, prepare for market, and sell the logs, and, after deducting from the proceeds all expenses in marketing the logs, for booming, stumpage, etc., and the money advanced by them, with interest, and a commission of two per cent. on the sales, to turn over the balance to M. *Held,* that S. and T. had a direct interest in having the timber cut and delivered to them and in avoiding the filing of liens thereon by employees of M.; and that an oral promise by S. & T., made before the work was done, to pay an employee of M. for his labor, (relying upon which, such employee refrained from asserting a lien upon the logs), was not within the statute of frauds, although exclusive credit was not given to them.

3. Evidence that a party made a certain promise to one person is not admissible to prove that he made a like promise to another person similarly situated, especially when the latter knew nothing of the former promise and could not have been affected by it.

4. Payment by the owner of property for the services of an employee of a contractor doing work thereon, made to avoid the enforcement of a lien by such employee, is not an admission of a primary liability to pay for such services.

5. A witness having testified that a party made a certain promise, and the latter having denied it, it was not error to refuse to instruct

the jury that such denial was not negative testimony within the meaning of the rule that affirmative testimony is of more value than negative testimony. Yet the jury might properly give to such denial greater weight than to the opposing testimony.

APPEAL from the Circuit Court for *St. Croix* County.

The plaintiff brought this action as assignee of one John Hennessy, to recover an unpaid balance for work and labor alleged in the complaint to have been done by the latter for the defendants as partners, between October 1, 1875, and March 27, 1876, in and about the cutting and hauling of certain pine saw-logs. It is alleged that the labor was performed at the special instance and request of the defendants; also that one McDonald had charge of the work for the defendants, and employed the men for them to do it, and that the defendants promised to pay the men so employed. A promise by the defendants, made after the work was done, to pay Hennessy such unpaid balance, in consideration of which he omitted to enforce a lien upon the logs therefor, is also alleged.

The defendants, by their answer, deny that they employed Hennessy to do the work, or authorized McDonald to do so, or ever agreed to pay Hennessy, or any other man or men employed by McDonald, for their work. They also specially deny an allegation in the complaint to the effect that they made certain payments to Hennessy on account of his work.

Attached to the answer, as an exhibit, is a contract between the defendants and McDonald, dated November 3, 1875, in and by which it appears that one of the defendants held a permit, (presumably for his firm), executed to him by the owner of the lands described in the contract, to cut and remove therefrom the timber standing on said lands. McDonald agreed with the defendants to cut, haul, mark the same with the defendants' mark, and drive all the pine timber on said land suitable for saw-logs during the logging

season of 1875–76, and deliver the same to the defendants in the St. Croix boom free from all labor liens. The defendants agreed to advance $1,000 in goods and cash to McDonald, to be used by him in such business. The contract then provides that McDonald (party of the second part) will perform all of the conditions of the permit to cut the timber, and that he, McDonald, "will pay to said *Schupp & Tozer* the amount of all their advances in goods, with interest at twelve per cent. per annum, and the amount of cash advanced, with interest at fifteen per cent. per annum until fully paid, and a commission per cent., and all expenses of preparing for market, and all boomage, stumpage, sluicage, and other charges or liens against said logs paid or assumed by first parties (the defendants); and first parties agree to receive said logs through said boom, prepare the same for market, and sell them on the best terms they are able, and from the proceeds, after deducting said stumpage, and all costs and expenses of preparing said logs for market, and all money advanced by them, with interest as aforesaid, and all goods and supplies, with interest as aforesaid, and a commission of two per cent. upon the gross amount of sales, for their services, to turn over the balance to second party or his legal representatives; and that, when said claims and all of them are fully paid, they will cause said mark to be transferred to second party, and all the remaining logs and timber bearing the same." This contract was introduced in evidence by the plaintiff.

The testimony of Hennessy tends to show that after he had talked with McDonald about working for him, and after the price had been agreed upon, but before Hennessy commenced work, the latter told the defendant *Tozer* he was not acquainted with McDonald, and wanted to know how it would be about his pay, whereupon *Tozer* said: "I will pay you when the logs are sold." Hennessy also testified that he relied upon *Tozer* for his pay when he did the work, and

because of such promise he refrained from enforcing a lien upon the logs for the price of his labor. *Tozer* denies that he made any such promise.

It seems to be established by the testimony that the defendants received and disposed of the logs got out by McDonald, and that the proceeds thereof lacked about $600 of paying the defendants' demands against him for advances, etc.

There seems also to be some testimony of the promise alleged to have been made by defendants, after the work was done, to pay Hennessy the balance due him therefor, and perhaps also some testimony that McDonald was authorized by the defendants to employ men for them. Certain other testimony stated in the opinion was received under objection by the defendants.

The circuit judge charged the jury as follows:

"This case turns upon a simple question of fact as to whether the defendants promised, in consideration that the plaintiff's assignor, Mr. Hennessy, would work in the woods for Mr. McDonald, that they would pay for it. The question is whether there was a promise by the defendants to pay for that labor, or if, as is claimed by the plaintiff here, the defendants told Mr. McDonald to hire men on their account and that they would pay for it. That would make them liable,— a promise either personally, or a promise made by Mr. McDonald as an agent for that purpose. If you find that the written agreement offered in evidence was the only contract entered into between *Schupp & Tozer* and John McDonald, then I charge you that that contract of itself shows no agency on the part of McDonald for the defendants. There is nothing in his contract that makes McDonald agent for the defendants. But it is competent for them to appoint him their agent, authorizing him to hire men on their behalf, if they chose to, verbally. If they did so, they are liable to pay the plaintiff the demand assigned to him by Mr. Hennessy.

"There is a direct conflict in the proof in this case. The defendants deny that they ever made any promise, and it is a question of fact for you to determine. It will not be necessary for me to refer to the proof, or to say anything further about the case. It is a question of fact for you to determine from the evidence. You are the sole judges of the credit to be given to each one of these witnesses, and you will consider their testimony and bring in a verdict as you may find. If you find for the plaintiff, the amount of his recovery will be $330; if you find for the defendant, you will simply say you find no cause of action."

The court refused to instruct the jury as requested on behalf of the defendants as follows: "It is sometimes said that affirmative testimony is of more value than negative testimony. But I charge you that where one man affirms a fact, and another positively denies it, the denial is not negative testimony within the rule just stated."

The jury returned a verdict for the plaintiff for the amount of his claim, and, after a motion by defendants for a new trial had been denied, judgment for the plaintiff was entered pursuant to the verdict. The defendants appeal from the judgment.

For the appellants there was a brief by *W. H. McDonald* and *Clapp & Macartney*, and oral argument by *Mr. Clapp.* They argued, among other things that the testimony of the witness Packenham was inadmissible. *Carter v. Pryke,* Peake, 95; *Balcetti v. Serani,* id., 142; *Holcombe v. Hewson,* 2 Camp., 391; *Edge v. Pemberton,* 12 Mees. & W., 187; 1 Greenl. on Ev., secs. 52, 448–450; Phillips on Ev. (5th Am. ed.), 748; *Collins v. Rochester,* 6 Cush., 396; *Baird v. Gillett,* 47 N. Y., 186; *Mailler v. Exp. Propeller Line,* 61 N. Y., 316; *Cole v. Commonwealth,* 5 Gratt., 696; *Williams v. State,* 45 Ala., 57; *J. M. & I. R. R. Co. v. Esterle,* 13 Bush., 667; *Cummings v. Williamsport,* 84 Pa. St., 472; *Harris v. Wilson,* 7 Wend., 58; *Jackson v. Smith,* 7 Cow., 717; *U. S. Bank*

*v. Corcoran*, 2 Pet., 121; *Lucas v. Brooks*, 18 Wall., 436; *Sherman v. Champlain Transp. Co.*, 31 Vt., 162; *Moore v. Harvey*, 50 id., 297; *Gibbons v. W. V. R. R. Co.*, 58 Wis., 335; *Carey v. Bright*, 58 Pa. St., 70. The only direct testimony as to the agreement on the part of *Tozer*, to pay Hennessy for his work, is the positive averment of such agreement by Hennessy and the positive denial by *Tozer*, and the defendants were entitled to have the latter considered of equal weight with the former, so far as the question of positive or negative testimony might arise. The instruction asked by the defendants was good law and applicable to the case. *Reeves v. Poindexter*, 8 Jones (N. C.), 308; *C., B. & Q. R. R. Co. v. Cauffman*, 38 Ill., 424; *R. R. I. & St. L. R. R. Co. v. Hillmer*, 72 id., 235; *Coughlin v. People*, 18 id., 266; *Sobey v. Thomas*, 39 Wis., 324. The oral promise by *Tozer*, if made, was no more than a promise to answer for the debt of another. The fact, if it be one, that the defendants afterwards advanced so much money as to render them virtually the owners of the logs and, in the end, to leave them creditors of McDonald, cannot be considered in determining what the rights and interests of the parties were at the time the promise was made. In such cases unless exclusive credit was given to the guarantor the promise is within the statute of frauds. *Thwaits v. Curl*, 6 B. Mon., 472; *Moses v. Norton*, 36 Me., 113; *Larson v. Wyman*, 14 Wend., 246; *Keate v. Temple*, 1 Bos. & Pul., 158; *Smith v. Hyde*, 19 Vt., 54; *Chase v. Day*, 17 Johns., 114; *Bresler v. Pendell*, 12 Mich., 224; *Ellison v. Jackson W. Co.*, 12 Cal., 542; *Puckett v. Bates*, 4 Ala., 390; *Anderson v. Hayman*, 1 H. Blacks., 120; *Walker v. Richards*, 39 N. H., 259; *Steele v. Towne*, 28 Vt., 771; *Hill v. Raymond*, 3 Allen, 540; *Carville v. Crane*, 5 Hill, 483; *Taylor v. Drake*, 4 Strobh., 431; *Leonard v. Vredenburgh*, 8 Johns., 29; *Billingsley v. Dempewolf*, 11 Ind., 414; *Noyes's Ex'x v. Humphreys*, 11 Gratt., 636; *Sinclair v. Richardson*, 12 Vt., 33; *Emerick v. Sanders*,

1 Wis., 77; *Hutson v. Field*, 6 id., 407, and note; *Osborn v. F. L. & T. Co.*, 16 id., 35; *Clapp v. Webb*, 52 id., 638; *Blake v. Parlin*, 22 Me., 395; *Jones v. Cooper*, 1 Cowp., 227; *Matson v. Wharam*, 2 Term, 80.

For the respondent there was a brief by *John W. Bashford* and *L. P. Wetherby*, attorneys, and *Tenney & Bashford*, of counsel, and oral argument by *Mr. R. M. Bashford.* As to the admissibility of the testimony of Packenham, they cited: *Ins. Co. v. Weide*, 11 Wall., 438; *Roberts v. Continental Ins. Co.*, 41 Wis., 328; *Randall v. N. W. Tel. Co.*, 54 id., 140; *Barteau v. West*, 23 id., 420; 1 Greenl. on Ev., secs. 51, 51a.

LYON, J. 1. The question whether, after Hennessy had performed the labor on the logs got out by McDonald, the defendants promised to pay him the balance due therefor, was not submitted to the jury. The learned circuit judge in his charge made the case turn entirely upon the question whether the defendants promised Hennessy before he did the work, either personally or through the authorized agency of McDonald, to pay him therefor. This is equivalent to a ruling that there was not sufficient testimony to go to the jury tending to show such promise after the work was done. McDonald testified that the defendant *Schupp* made that promise to Hennessy in the defendant's store after the close of the logging season, but Hennessy testified to the occurrences on that occasion, and says that the only remark made by *Mr. Schupp* was to ask if $25, then paid him by a clerk, had been indorsed on his time-bill, and that he never had any talk with *Mr. Schupp* about this matter. Were Hennessy the plaintiff in this action, we should be inclined to think him bound by this admission, and that the court properly disregarded the testimony of McDonald to the contrary. We do not perceive how the assignee of Hennessy can be in any better or different position.

2. We are now to consider whether the alleged verbal promise of the defendant *Tozer*, made (if at all) before the work was done, to pay Hennessy for his work, is within the statute of frauds, and therefore void. On the authority of *Young v. French*, 35 Wis., 111, and *Weisel v. Spence*, 59 Wis., 301, and the cases cited therein, we are of the opinion that this question must be answered in the negative.

The legal title to the logs was in the defendants under the permit from the owner of the lands on which they were cut. The only interest McDonald had therein was confined to the surplus logs remaining after the defendants had sold sufficient of them to pay their advances and the interest thereon, their expenses in preparing the logs for market, for booming, stumpage, and sluicing, their commission, and all charges or liens against the logs which they might pay or assume, pursuant to the stipulations in the contract with McDonald. His interest was contingent upon there being any surplus, and it turned out that the proceeds of all the logs were not sufficient to reimburse the defendants. There being no surplus, the interest of McDonald in the logs proved to be merely nominal.

Thus holding the legal title of the logs, which the result of the enterprise showed was the only substantial interest in them, and having bound themselves unconditionally to make advances to McDonald to the amount of $1,000, (to say nothing of the commissions and liberal interest they were entitled to, and the cost of stumpage and other expenses they agreed to pay), the defendants had a direct interest in having the logs cut, hauled, and run into the St. Croix boom, and in avoiding the filing of liens upon them by McDonald's employees. Hence the labor of Hennessy upon the logs was performed upon the property of the defendants, and inured directly to their benefit, as did also his neglect to assert a lien thereon for such labor. Under these circumstances the alleged promise of the defendants to pay

Hennessy for his labor (if made) was in furtherance of their own interests, and the consideration therefor was a benefit accruing directly to them. This takes the promise in question out of the statute of frauds under all of the authorities, particularly those above cited, from which the present case is not distinguishable.

In this view of the case it is quite immaterial that the original contract to perform the labor was made with McDonald, who remained liable therefor, and that the exclusive credit was not given to the defendants. *Wyman v. Goodrich*, 26 Wis., 21. But we are further of the opinion that there was sufficient evidence in the case to send the question to the jury, whether the exclusive credit was given to the defendants by Hennessy. That question answered in the affirmative would bring the case within the rule of *West v. O'Hara*, 55 Wis., 645, and the cases cited in the opinion by Mr. Justice ORTON.

3. The written contract between defendants and McDonald did not authorize the latter to employ men for the defendants, or bind them to pay for cutting the logs. The jury were so instructed, but the question whether the defendants so authorized McDonald verbally was submitted to the jury. The evidence of any such verbal authority seems to us very slight, and it is doubtful whether it is sufficient to support a finding that such authority was given. The important, if not the controlling, question in the case is, Did the defendant *Tozer*, before Hennessy commenced work, promise to pay him for his work? If he did, the defendants are liable in this action. On this issue Hennessy testified positively to such promise, and *Tozer* as positively denied that he made it. There was no other direct testimony on the subject.

The plaintiff introduced one Packenham as a witness, who testified that he worked with Hennessy for McDonald in cutting and getting out the logs, and that during the follow-

ing spring *Mr. Tozer* promised to pay him for his work. This promise was made after the witness had threatened to enforce a lien upon the logs. The testimony was received and retained against the objection of the defendants and their motion to strike it out. The effect of it upon the minds of the jurors may have been — probably was — to strengthen the testimony of Hennessy as to the alleged promise by *Tozer* to him, by showing that he made a like promise to one similarly situated. There is no claim that the witness, when he did the work, had any promise of the defendants to pay him therefor, or that Hennessy knew that any promise had been made by them to the witness.

This testimony was clearly inadmissible. Proof that the defendants made a like contract with another similarly situated, especially when Hennessy knew nothing of such contract, and could not have been affected by it, does not tend to prove that the defendants made the alleged contract with Hennessy. There is no logical connection between the two acts. Yet the admission of proof of the contract with Packenham, against defendants' objection, was, in effect, a holding that it tended to prove the defendants made a like contract with Hennessy, and this testimony may have turned the scale in favor of the plaintiff. The case, in this respect, is not distinguishable in principle from the late cases decided by this court, of *Gibbons v. W. V. R. R. Co.*, 58 Wis., 335; *Kvammen v. Meridean Mill Co.*, id., 399; *Nash v. Hoxie*, 59 Wis., 384, wherein evidence of a similar character was held inadmissible. The reasons for the rule there laid down are equally applicable here.

It was ingeniously argued by counsel for the plaintiff that because it is denied in the answer that the defendants ever represented to Hennessy, "or any other man or men employed by McDonald," that the latter employed the men for them, the testimony of Packenham, taken in connection with other facts in the case, was competent as bearing upon

that issue. The answer to this proposition is that the witness did not testify that either of the defendants made any such representation to him, or in any manner admitted their primary liability to pay his claim, except by paying it. The reason why they paid it is obvious. They did so to avoid the enforcement of a lien upon their logs, and there is nothing in the testimony tending to show that they paid it because they were primarily liable therefor.

It was error, therefore, to admit the testimony of Packenham, and, because such error may have been prejudicial to the defendants, it necessarily works a reversal of the judgment.

4. The trial judge refused an instruction proposed on behalf of the defendants as follows: "It is sometimes said that affirmative testimony is of more value than negative testimony. But I charge you that where one man affirms a fact and another positively denies it, the denial is not negative testimony within the rule just stated." The proposed instruction, applied to the facts of this case, is to the effect that the testimony of *Tozer* denying that he promised to pay Hennessy for his work, is affirmative testimony. Very clearly it is negative testimony. *Ralph v. C. & N. W. R'y Co.*, 32 Wis., 177. Yet the jury might, in view of all the circumstances of the case, properly give to it as great, even greater, weight than they accord to the opposing testimony of Hennessy. The whole matter is for the jury. It was not error to refuse the instruction.

5. A question was raised as to the sufficiency of the assignment to the plaintiff. We think it sufficiently appears that Hennessy duly assigned to the plaintiff his claim against the defendants.

*By the Court.*— The judgment is reversed, and the cause remanded for a new trial.