A. G. Kesler and George H. Dodson v. Ned F. Cheadle.

(Filed February 5, 1903.)

1. STATUTE OF FRAUDS—Law Construed. A promise to pay for merchandise furnished to a third person is an original and not a collateral promise, is founded on a sufficient consideration, and is not within the statute of frauds as a promise to pay the debt of another, and hence it need not be in writing.

2. EVIDENCE—Books of Vendor Competent for What Purpose. The fact that merchandise was charged on the books of the vendor to the person to whom they were delivered, is competent evidence as tending to show that the sale was made to it and upon its credit. However, such fact is not conclusive evidence, and is open to explanation.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before John H. Burford, Trial Judge.*

*George S. Green, George M. Green* and *Cotteral & Hornor,* for plaintiffs in error.

*Lawrence & Huston,* for defendant in error.

Opinion of the court by

Hainer, J.: This was an action brought by N. F. Cheadle against the plaintiffs in error to recover the sum of $205.48, for merchandise and coal alleged to have been sold and furnished to the said plaintiffs in error, defendants in the court below, and delivered at the Palace laundry in the city of Guthrie by the defendant in error, plaintiff in the court below, at the special instance and request of said plaintiffs in

error.   To this petition the defendants answered by a general denial.   Subsequently an amended petition was filed by the plaintiff; but upon motion of the defendants the additional matter set forth in the amended petition was stricken out, and the cause allowed to stand upon the original petition and the answer thereto.   Upon the issues thus framed the cause was tried to a jury, which resulted in a verdict and judgment for the plaintiff for the amount claimed in his petition.   From this judgment the defendants appeal.

It is contended by plaintiffs in error that since the court sustained the motion of the defendants to strike out the first cause of action in plaintiff's amended petition, it was manifest error in permitting evidence to be introduced over the objections of the defendants tending to show a secondary liability on the part of the defendants upon the issues made by the pleadings.   This contention is not tenable and is an erroneous theory of the case.   The plaintiff based his action solely on the ground that Kesler and Dodson were the original promisors, and that they were primarily liable for the coal sold and delivered to the Palace laundry company.   No attempt was made by the plaintiff to establish a collateral undertaking, or a secondary liability.   The law on this subject, it seems to us, is well settled.   In order to bring a promise within the statute of frauds, the undertaking must be collateral, and not original.   There must be a principle debtor, for whom the promisor undertakes to answer, and if the promisor   makes himself primarily liable there is no contract of guaranty or suretyship; and hence the agreement need not be in writing.   This rule is illustrated by Sir William Anson in his work on Contracts, page 74, as follows:

"If two come to a shop and one buys, and the other, to gain him credit, promises the seller, 'If he does not pay you, I will,' this is a collateral undertaking and void without writing by the statute of frauds. But if he says, 'Let him have the goods, I will be your paymaster,' or 'I will see you paid,' this is an undertaking as for himself, and he shall be intended to be the very buyer, and the other to act as but his servant."

And in *Larson v. Jenson,* 53 Mich. 427, this same rule is clearly enunciated.

It is true that Cheadle testified that "at the start" there was no arrangement made with the plaintiffs in error to furnish coal to the Palace laundry company. But after several loads had been delivered to it, the bookkeeper called his attention to the fact that the coal had not been paid for, and then he went to see Kesler and Dodson in reference to the matter. Concerning the conversation he had with Dodson and Kesler, Cheadle testified as follows:

"Question. Where did you see Mr. Kesler? Answer. At his place of business.

"Ques. What conversation did you have with him concerning it? Ans. I told him that I had furnished coal there and took the bill up, and that I wanted to know about it, and who was to pay for it, and he did not pay it at that time, but said to bring the bill in next Monday, and to go ahead and leave coal there, and he would see that it was paid.

"Ques. What, if anything, was said between you and him as to future deliveries? Ans. He told me to keep on delivering coal there; that he and Mr. Dodson would see that I got my money.

\* \* \* \* \* \* \* \*

"Ques. State whether or not you had anything more to

do with the Palace laundry, as far as you knew the Palace laundry, after that conversation with Mr. Kesler? Ans. None whatever.

"Ques. State whether or not you had any conversation with Mr. Dodson? Ans. I did.

"Ques. When was the first time? Ans. About the time that I went up to see Mr. Kesler, I think it was the same day, and they both told me the same thing.

"Ques. State to the jury what Mr. Dodson told you? Ans. Mr. Dodson told me to go ahead and leave coal there, and that he and Mr. Kesler would see that I got my money—not once but a dozen times."

This evidence was certainly competent and material, and if found true by the jury clearly established a primary liability upon the part of Kesler and Dodson, founded upon an original and independent promise to pay for the coal delivered to the Palace laundry company, and would not constitute a collateral undertaking or guaranty which would bring it within the statute of frauds. On the other hand, the defendants denied that they agreed to be personally liable for coal delivered to the Palace laundry company, and denied the conversation detailed by Cheadle, "that they would see that he was paid for coal delivered to the Palace laundry." It also appeared from the evidence that Dodson and Kesler were officers and principal stockholders in the Palace laundry company, Dodson being its president, and Kesler its treasurer. The question then whether the defendants agreed to become individually and personally liable for the coal delivered to the Palace laundry company, and that Cheadle sold and delivered the same on the credit of the defendants, and on their per-

sonal liability, and not on the credit of the Palace laundry company, was purely a question of fact to be submitted to the jury under proper instructions, and for the jury to determine from all the evidence and circumstances surrounding the case.

In *Harris v. Frank,* 22 Pac. 858, the supreme court of California, in discussing this subject, said:

"The question whether the contract was one of original promise, or of guaranty merely, is always one for the jury (or in this case for the trial court) to determine from the surrounding circumstances of the case."

In *Barrett v. McHigh,* 128 Mass. 165, it was said:

"There was evidence proper to be considered by the presiding justice who tried the case without a jury, tending to show that the goods for which this suit is brought were sold upon the sole credit of the defendant and that he was liable as an original promisor, and not as a guarantor. Upon this question the finding of the justice is conclusive, and we cannot revise it."

In *Cole v. Hutchinson,* 26 Pac. 319, the supreme court of Minnesota, in passing upon this question, used the following language:

"From the evidence as to this promise, plaintiff claims that it was an order for goods to be delivered to James D., and that the sale, when made by delivery of the goods, was to defendant, and that the debt thus accruing was his debt as purchaser. On the other hand, defendant claims that, at most, it proves only a promise to answer for any debt that James D. might incur in the purchase of the goods, and that it is therefore within the statute of frauds, and not being in writing, is void. The evidence of the conversation in which

the promise was made was such that the jury might have found the promise as claimed by either party, and the verdict could not have been disturbed."

It will thus be seen that this question was squarely presented to the jury, and a verdict returned for the plaintiff. And the law is well settled that where a controverted question of fact is submitted to the jury under proper instructions, the appellate court will not disturb such verdict where the evidence reasonably tends to sustain it.

But it is contended by plaintiffs in error that the books show that if there is any liability on the part of Kesler and Dodson, it was merely as guarantors. And in support of this contention counsel call our attention to the books of Cheadle, which were offered in evidence, and which show that the coal was charged as follows: "Palace laundry company, guaranteed by Kesler and Dodson." But the bookkeeper who was called as a witness on behalf of the plaintiff testified that it merely signified that the coal was delivered to the Palace laundry, and not to whom it was charged. The fact that the coal was charged on the books, and delivered to the Palace laundry, was competent evidence to show that the sale was made to it and upon its credit. However, it was not conclusive evidence, and was open to explanation. (*Larson v. Jensen, supra.; Lance v. Pierce et al.* 101 Ind. 596; *Ruggles v. Gatton,* 50 Ill. 412; *Foster v. Persch,* 68 N. Y. 400; *Champion v. Doty,* 31 Wis. 190.)

But it is urged by plaintiffs in error that the court erred in giving instructions four, eight and nine. We do not think these instructions are subject to the criticism made against

them. In our opinion the instructions, when taken as a whole, fairly, fully and correctly state the law applicable to this case.

In instruction three, the court charged the jury that:

"The burden is on the plaintiff to prove by a preponderance of the evidence that the defendants agreed and promised to become individually and personally liable for the coal to be ordered by the laundry company; that he sold and delivered the coal on the credit of the defendants, and on their personal liability, and that no part of the credit was given to the laundry company, and that the coal has not been paid, for before he can recover."

And instruction six reads as follows:

"The fact that the defendants were stockholders in the Palace laundry company does not make them liable for any of its debts or for the payment of the plaintiff's demand. The Palace laundry company was a corporation authorized to contract and be contracted with, and was liable for its debts and obligations and if it received and used the coal which plaintiff is suing for, it is liable for the coal. The defendants can only be made liable by reason of an independent promise to personally pay, made by them, and which was relied upon by the plaintiff, and the coal sold upon the faith of their promise, and the strength of their credit."

Instructions four, eight and nine complained of by the plaintiffs in error, apply the abstract propositions of law to the evidence, and they were certainly not misleading nor in any wise prejudicial to the rights of the defendants. It follows that the promise to pay for the coal delivered to the Palace laundry company was an original and not a collateral promise; that it was based upon a sufficient consideration; that it was not an agreement of guaranty or suretyship, and

Kesler and Dodson v. Cheadle.

that it did not fall within the statute of frauds as being a promise to pay the ·debt of another; and consequently it was not essential that it should be in writing.

There being no error in the record requiring a reversal of the judgment of the district court, it is therefore affirmed.

Burford, C. J., who presided in the court below, not sitting; Irwin, J., and Beauchamp, J., absent; all the other Justices concurring.