### LINDLEY v. KELLY et al.

No. 3680.    Opinion Filed December 15, 1914.

Rehearing Denied April 27, 1915.

(147 Pac. 1015.)

1.    **APPEAL AND ERROR—Harmless Error—Ruling on Demurrer.**
Where a petition contains a misjoinder of parties and causes, and demurrer thereto is overruled, and issue is joined on a single cause against one of the defendants, the other causes being abandoned, the error in overruling the demurrer is harmless.

2.    **APPEAL AND ERROR—Venue—Objection to Jurisdiction—Waiver—Presentation Below—Necessity.** Where a defendant re-

sides and is served with summons in a county other than the one in which the suit is filed, and such defendant demurs to the petition without objection to the jurisdiction of the court, he thereby waives his right to have the case filed and tried in the county of his residence, and such objection cannot be raised for the first time on appeal.

3.    FRAUDS, STATUTE OF—Agreement by Stockholders—Satisfaction of Corporate Liability. Where A., B., and C. contract with a corporation to do certain work and such corporation borrows money from one of its stockholders to carry on the work, and such corporation is unable to get funds to pay A., B., and C., who are about to quit on account of nonpayment, and said stockholder takes an assignment of all the assets of said corporation and takes control of the corporation work to carry out its contract in order to secure the payment of the money loaned by him to the corporation and verbally proposes to A., B., and C. that if they will complete their contract he will pay them the amount then due and for the labor to be performed, which is accepted and the work performed by A., B., and C. —held, that the stockholder's proposal is an original promise, and the fact that it results in the satisfaction of the corporation's liability does not bring it within the statute of frauds.

4.    TRIAL—Instructions—Indorsement. Where the court reads his charge to the jury and counsel then desire to have the court indorse thereon after each instruction "his exception," "the ruling," "allowance of exception," and signature of the judge. the denial of such request is not error. The making of such record is not intended for inspection by the jury, and if counsel is permitted to save his exceptions and incorporate the same in his record for appeal, every right is thereby secured and protected.

5.    APPEAL AND ERROR—Harmless Error—Contents of Bill of Sale. Witnesses were permitted to testify as to the contents of a bill of sale, and the court properly instructed the jury to disregard such testimony. Held, not sufficient ground to justify a reversal of the cause.

(Syllabus by the Court.)

*Error from District Court, Tillman County;*
*Frank Mathews, Judge.*

Action by W. H. Kelly and others against T. H. Lindley. Judgment for plaintiffs, and defendant brings error. Affirmed.

*Wilson & Tomerlin* and *Ahearn & Searcy,* for plaintiff in error.

*Mounts & Davis* and *Gray & McVay,* for defendants in error.

LOOFBOURROW, J. The petition alleges, in substance, that the Hackberry Flat Ditch Company was legally organized for the purpose of ditching a certain drainage district in Tillman county, Okla.; that said company entered into a written contract with J. E. Kirkes to construct said drainage ditch, the consideration named being $21,203.93; that thereafter J. E. Kirkes assigned said contract to the Lindley-Kirkes Construction Company, a corporation, the stockholders of which were J. E. Kirkes, T. H. Lindley, and his daughter, M. J. Lindley, who were vice president, president, and secretary-treasurer, respectively; that thereafter the Lindley-Kirkes Construction Company, by verbal contract, employed plaintiffs, Kelly, Warren & Warren, to construct a part of said ditch, and agreed to pay plaintiffs $4,607.80 therefor; that the sum of $1,744.20 was paid thereon as the work advanced; that plaintiffs performed their contract, and there is now due them from the Lindley-Kirkes Construction Company the sum of $2,863.60. It is further alleged that T. H. Lindley claims all the proceeds and amounts due for digging of said ditch, by reason of an assignment thereof to him, made by said construction company, and that there is due from the landowners $7,000 or $8,000. It is further alleged that, in addition to their contract with Lindley-Kirkes Construction Company, the defendant Lindley agreed by verbal contract with these plaintiffs that if they would complete the said contract as per agreement with the Lindley-Kirkes Construction Company, which he then owned individually, such arrangement being to the individual interest of said Lindley, he (Lindley) would pay plaintiffs whatever sum might be due them for such work; that there is now due them $2,863.60 from said defendant Lindley. Plaintiffs further allege that by virtue of the contract above referred to and by verbal agreements and contracts with these plaintiffs, the Hackberry Flat Ditch

Company is indebted to the plaintiffs in the sum of $2,863.60 for the value of their work on said ditch, etc.

Attached to the petition is Exhibit A, the contract between Hackberry Flat Ditch Company and J. E. Kirkes; Exhibit B, the assignment of the contract from Kirkes to the Lindley-Kirkes Construction Company, and Exhibit C, which is as follows:

"JUNE 1st, 1909.

"This is to certify that the Lindley-Kirkes Construction Company have this day assigned all their rights, title and interest in and to all money now due them and all future payments that will become due from time to time, as the work progresses on the Hackberry Flat Drainage Ditch, in Tillman county, Oklahoma, to T. H. Lindley.

"LINDLEY-KIRKES CONSTRUCTION COMPANY,

"By J. E. KIRKES.

"M. J. LINDLEY, *Secretary.* [Seal.]"

A summons was issued and served on the Hackberry Flat Ditch Company, and returned not found as to Lindley-Kirkes Construction Company and T. H. Lindley. An alias summons was issued and served on T. H. Lindley in Oklahoma county. Thereafter defendant Lindley filed a demurrer to the petition, consisting of: First, a general demurrer; second, that two or more causes of action were improperly joined; third, defect in parties defendant— which demurrer was overruled. Thereafter Lindley answered. No service was ever had upon or appearance entered in the cause by the Lindley-Kirkes Construction Company. There was no testimony taken nor judgment entered against it or the Hackberry Ditch Company, but the case was tried only against T. H. Lindley, upon his verbal promise to pay.

The evidence shows that when the work was partially completed, plaintiffs were in need of funds to pay their labor, and, the Lindley-Kirkes Construction Company failing and refusing to pay them for their labor, plaintiffs

were arranging to quit work on the ditch, and Lindley then came to plaintiffs' and promised to pay them for all their labor on the ditch if they would go ahead and complete it, and stated in substance that he had taken over the Lindley-Kirkes Construction Company, that Kirkes had transferred his interest therein to Lindley; as Lindley expressed it, he was "the whole cheese." Lindley also testified that he had advanced money to the Lindley-Kirkes Construction Company, and to secure the same he took charge of the work, and took the assignment, Exhibit C. The testimony also shows that Lindley claimed all the property. of every description which formerly belonged to the Lindley-Kirkes Construction Company. The plaintiffs' testimony supports the allegations of their petition as against Lindley, and shows that they relied upon his promise, and that it was to his personal interest and advantage for them to complete the work at the time their testimony shows he promised to pay them.

Defendant assigns as error the overruling of the demurrer. This was error, for there are two or more causes of action improperly joined, but there was no service upon nor appearance by the Lindley-Kirkes Construction Company. There was no proof as to the allegations concerning said construction company and the Hackberry Flat Ditch Company which would not have been necessary had they not been named in the petition as defendants. If the demurrer had been sustained, the plaintiffs could have dismissed as to the Lindley-Kirkes Construction Company and Hackberry Flat Ditch Company, and the trial could have proceeded just as it did proceed, and the same result have been obtained. The error in overruling the demurrer was harmless. See *Mullen v. Thaxton,* 24 Okla. 643, 104 Pac. 359. *Lynch v. Richardson,* 5 Okla. 628, 49 Pac. 66; 6 Enc. Pl. & Prac. 368, and notes.

Counsel for plaintiff in error say:

"The demurrer should have been sustained for misjoinder of causes. To hold otherwise would be placing a premium upon the wrongful acts of plaintiff in filing a suit on one theory in order to obtain service upon a nonresident defendant of the county in which the suit was brought, and after service was obtained, then to change the cause of action."

Summons was served upon Lindley in Oklahoma county, and the suit was filed in Tillman county, but no objection was urged against the service, and Lindley filed his demurrer, thereby submitting himself to the jurisdiction of the court. A timely and proper objection in such a case might avail, but the same cannot be considered for the first time on appeal.

It is next contended that neither the petition nor the evidence presents a cause of action against the plaintiff in error, because the alleged verbal promise is one to answer for the debt, default, or miscarriage of another, and is within the statute of frauds. After the assignment, Exhibit C, *supra,* was made to Lindley, he assumed control of the ditch, and the construction company then being out of funds and being in arrears for work done by the defendants in error, according to their testimony, the defendants in error were threatening and intending to quit; plaintiffs testifying, in part, as follows:

"Mr. Lindley came in and told us that he had bought this thing, and he said, 'Go right ahead and complete this work, and I will pay you.' He says, 'I have got the money to pay you.' We told him he was bound to have some money to pay for labor and feed bills, and he says: 'Go ahead. The whole fix is mine; I will pay you'—and showed his bill of sale. He came to me and told me he had Mr. Kirkes' bill of sale of his interest in it. Mr. Lindley came down there, and we told him we just had to have some money; we couldn't run any longer. He told us to go ahead with the work; that he was the whole damn cheese; told us that the minute he had the ditch done, he said, he had these farmers where he could make them pay or make and break every one of them."

This testimony was denied by Lindley, but the jury found against him on the facts. Lindley testified on cross-examination, in part, as follows:

"Q. I will ask you if this is the assignment [handing witness Exhibit C]? A. Yes, sir. Q. When did you make that assignment? A. I don't recollect the day; it was when they were out of money and couldn't get any more. Q. Was that before or after you come down here? A. It was long before. Q. I will ask you if there hasn't been about $17,000 paid in? A. Fifteen or sixteen thousand dollars. Q. There is $4,000 or $5,000 yet due? A. Yes, sir. Q. And you are claiming it all individually, ain't you? A. I took that as security for money I have loaned the company. Q. You are claiming it every bit individually for the money? A. I don't know whether I ever made any claim to anybody. Q. Ain't you now claiming every bit of this money due from the Hackberry Ditch Company, the balance due, individually, under this assignment? A. I am trying to collect the money I loaned the company?"

The rule seems to be that:

"Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability." (*Emerson v. Slater.* 22 How. 28, 16 L. Ed. 360.)

In Browne on Statute of Frauds, section 165, it is said:

"The statute contemplates the mere promise of one man to be responsible for another, and cannot be interposed as a cover and shield against the actual obligations of the defendant himself."

*Davis v. Patrick,* 141 U. S. 479, 12 Sup. Ct. 58, 35 L. Ed. 826, is a case in which the facts are very similar to the one at bar. Mr. Justice Brewer, speaking for the court, said:

"The thought is that there is a marked difference between a promise which without any interest in the subject-matter of the promise, in the promisor, is purely collateral to the obligation of a third party, and that which, though operating upon the debt of a third party, is also and mainly for the benefit of the promisor. The case before us is in the latter category. While the original promisor was the mining company, and the undertaking was for its benefit, yet the performance of the contract inured equally to the benefit of Davis and the mining company. Performance helped the mining company in the payment of its debt to Davis, and at the same time helped Davis to secure the payment of the mining company's debt to him; and as the mining company was apparently destitute of any other property, and the payment of its debt to Davis therefore depended upon the continued and successful working of this mine, and as the control and working of the mine had been put in the hands of Davis so that he might justly say, as he did, 'I am practically the owner,' it follows that he was a real, substantial party in interest in the performance of this contract. His promise was not one purely collateral to sustain the obligations of the mining company, but substantially a direct and personal one to advance his own interests. While the mining company was ultimately to be benefited, Davis was primarily to be benefited by the transportation of the ore; for thereby that debt, which otherwise could not, would be paid to him. He, therefore, in any true sense of the term occupied, not the position of a collateral undertaker, but that of an original promisor, and it would be a shadow on justice if the administration of the law relieved him from the burden of his promise on the ground that it also resulted to the benefit of the mining company, his debtor."

So, in the case at bar, the original promisor was the Lindley-Kirkes Construction Company, and the contract was for its benefit. It was out of funds, and Lindley had advanced it money. Unless the ditch was completed no money could be realized on the contract by the construction company, nor would it be able to pay Lindley; the performance of the contract inured to the benefit of both Lindley and the construction company; the promise of

Lindley to pay the defendants in error served him own pecuniary interest.

In *Kesler and Dodson v. Cheadle,* 12 Okla. 489, 72 Pac. 367, Kesler and Dodson were officers and stockholders in the Palace Laundry Company, Dodson being the president and Kesler its treasurer. Cheadle had furnished a quantity of coal to the laundry company and had not been paid; he then went to Kesler and Dodson, who informed him that "they would see that he was paid for coal delivered to the Palace Laundry," and he continued to furnish coal for the laundry. This was held to be an original promise, founded on sufficient consideration, and not within the statute of frauds, both as to the coal furnished before and subsequent to the promise. To the same effect is *Trulock v. Blair,* 8 Okla. 345, 58 Pac. 1097. See, also, *May v. Roberts,* 28 Okla. 619, 115 Pac. 771; *Waldock v. First Nat. Bank of Idabel,* 43 Okla. 348, 143 Pac. 53.

In *Hill Bros. v. Bank of Seneca,* 100 Mo. App. 230, 73 S. W. 307, defendant bank held a mortgage on a crop of wheat; $1,062 worth of threshing had been done when the bank took possession under its mortgage; the testimony showed that the agent of the bank promised to pay plaintiffs for the threshing which had been done, and if they would go on with the threshing the bank would pay for threshing the entire crop; the proposition was accepted, and the work completed. We quote from the opinion by Justice Goode:

"That was no special promise to answer for the debt of another, but a direct agreement on the part of the bank, through its agent, to pay plaintiffs a stipulated compensation for a service to be rendered. It was supported by an ample consideration, and was none the less valid because incidentally it would result in discharging Richardson's indebtedness for prior threshing. *Yeoman v. Mueller,* 33 Mo. App. 343; *Winn v. Hillyer,* 43 Mo. App. 139; *Walther v. Merrell,* 6 Mo. App. 370; *Calkins v. Chandler,* 36 Mich. 320. 24 Am. Rep. 593; *Crawford v. Edison,* 45 Ohio St.

239, 13 N. E. 80; *Clifford v. Luhring*, 69 Ill. 401. The contract in this case, so far as appears, was made for the exclusive benefit of the bank, and it received the benefit in the continued work of the plaintiffs. In such a case it is wholly immaterial that, in consequence of the performance of the contract, the debt of some one else will be paid, and immaterial, too, whether or not the original debtor remains liable. *Leonard v. Vredenburgh*, 8 Johns. [N. Y] 29, 5 Am. Dec. 317; *Dyer v. Gibson*, 16 Wis. 560; *Putney v. Farnham*, 27 Wis. 187, 9 Am. Rep. 459; *Calkins v. Chandler, supra; Farley v. Cleveland*, 4 Cow. [N. Y.] 432, 15 Am. Dec. 387; *Cleveland v. Farley*, 9 Cow. [N. Y.] 639; *Mallory v. Gillett*, 21 N. Y. 412; *Nelson v. Boynton*, 3 Metc. (Mass.) 396, 37 Am. Dec. 148; *Stewart v. Campbell*, 58 Me. 438, 4 Am. Rep. 296; 1 Reed on Stat. Frauds, sec. 570; Brown, Stat. Frauds (5th Ed.) sec. 165. Several of the cases we have cited, notably *Yeoman v. Mueller, Winn v. Hillyer*, and *Walther v. Merrell*, which were decided by this court, are in no respect different from the case at bar so far as the point in hand is concerned. If the defendant agreed to pay plaintiffs for threshing the entire crop of wheat, in consideration of their continuing to thresh after defendant got possession, and plaintiffs performed the contract, the defendant is as much liable for the work done before it got possession as for that done afterward."

In *Wills v. Cutler*, 61 N. H. 405, a firm was operating an iron foundry and sold the business to B.; at that time there was two or three months' wages due the employees of the foundry, and B. promised the employees if they would continue in his employ that he would pay the wages then owing by his vendor and pay the employees the same wages that they had theretofore received. This proposition was accepted, and it was held to be a promise to pay the debt of another, founded upon a new consideration, distinct from and independent of the debt, and that such promise was not within the statute of frauds, and that it was not necessary to reduce the same to writing in order to make it a valid, enforceable obligation.

See, also, *Emerson v. Slater*, 22 How. 28, 16 L. Ed. 360; *Hall v. Alford*, 105 Ky. 664, 49 S. W. 444, 20 Ky. Law Rep. 1482; *Roussel v. Mathews*, 62 App. Div. 1, 70 N. Y. Supp. 886; *Kelley v. Schupp*, 60 Wis. 76, 18 N. W. 725.

It is next contended that the court erred in permitting witnesses to testify, over the objection of the defendant, as to the bill of sale. If error, it was corrected by the court directing the jury to disregard any testimony concerning the contents of the bill of sale.

It is next contended that the court erred in refusing to allow the defendant to write, at the close of each instruction, the words, "Refused and excepted to," and in further refusing to sign the same. The court signed his name to the entire charge, but did not subscribe his name after each instruction separately. Section 5795, Comp. Laws 1909 (section 5003, Rev. Laws 1910), provides:

"A party excepting to the giving of instructions, or the refusal thereof, shall not be required to file a formal bill of exceptions; but it shall be sufficient to write at the close of each intrsuction, 'Refused and excepted to,' or, 'Given and excepted to,' which shall be signed by the judge."

The record recites:

"Thereafter, and at the close of the charge of the court, defendant T. H. Lindley in open court made the following application: 'Comes now the defendant T. H. Lindley, and at the close of the giving of the instructions to the jury by the court and now asks leave of the court to indorse at the close of each instruction given by the court, to wit, instructions Nos. 1, 2, 3, 4, and 5, the following: "To the giving of the foregoing instruction, the defendant, T. H. Lindley, excepts." The said defendant T. H. Lindley further asks leave of court to indorse thereon immediately following said words, the words, "Exception allowed," and asks and requests the court to sign the same, giving and allowing to the said defendant Lindley an exception at the end of each and every one of the said instructions, each to

be indorsed, "Excepted to—exceptions allowed." Which request is refused by the court, and counsel for defendant is directed to dictate his exceptions to the instructions to the stenographer, or to file the same in writing setting out his grounds of each exception, and general exceptions are refused. To the action of the court in refusing to allow the defendant Lindley to indorse his exceptions upon the charge at the close of each instruction, and to the action of the court in refusing to sign the same, the said defendant T. H. Lindley excepts.'"

Counsel for both plaintiffs and defendant rely upon the case of *Hurst v. Hill,* 32 Okla. 533, 122 Pac. 513. We are satisfied with that opinion, but find in it no authority for the reversal of this cause because the court did not, at the time, make or permit the indorsement requested by defendant. For the court to permit and make the indorsements requested on the instructions prior to their delivery to the jury might, in a great many instances, have a tendency to confuse the jury; and, while it would have been perfectly proper for the court to permit and make the indorsement following each instruction, after the verdict had been returned, it was not error for him to refuse to do so before delivering the written instructions to the jury.

It was not error to refuse to give a peremptory instruction for the defendant Lindley, and the instructions given fairly state the law applicable to the issues joined.

The judgment of the trial court is affirmed.

All the Justices concur, except KANE, C. J., absent and not participating.