## BOND v. KRUGG.

No. 16025—Opinion Filed Dec. 22, 1925.

1. **Bills and Notes — Original Promise to Pay Another's Debt—Liability Unaffected by Stopping Payment on Check.**

Where B. makes her check payable to K. and directs that it be delivered to K. for services to be rendered to W., and the check is delivered to K. and the services rendered by K. to W., a primary contractual obligation rests upon B. to make good the amount of the check to K.; and stopping payment upon the check does not destroy such contractual obligation.

2. **Judgment Sustained.**

Record held to require that the judgment be affirmed.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Creek County; James Hepburn, Judge.

Action by A. A. Krugg against Mrs. Oscar Bond. From the judgment, the defendant appeals. Affirmed.

C. F. Chapman, for plaintiff in error.

Hughes, Foster & Ellinghausen, for defendant in error.

Opinion by SHACKELFORD, C. The defendant in error will be referred to herein as plaintiff and the plaintiff in error as defendant, as they appeared in the trial court.

The cause was originally brought in the justice of the peace court; and after judgment an appeal was prosecuted to the district court. The plaintiff's declaration is upon a check given by the defendant to plaintiff or order, in the sum of $100, drawn against the American National Bank. Payment of the check was stopped by the defendant and the check protested, the protest fees amounting to $1.75. The check is set out in the bill of particulars, and is as follows:

"Sapulpa, Oklahoma, July 11, 1919, No. 542. American National Bank. Pay to Dr. Krugg or order $100 and no/100. Pay $100 and 00 cents. Mrs. Oscar Bond."

Indorsed on the face: "Payment stopped. Protested for nonpayment. H. Chapman, Notary Public. My commission expires 1-18-22. Fees $1.75."

Indorsed on back: "A. A. Krugg."

The prayer is for judgment for $101.75, the face of the check and protest fee paid, with interest at 6 per cent. per annum from the date of the check. No formal answer was filed by defendant, and none was required. The law treats defendant's obligation to pay the amount as denied.

In the trial in the district court the matter was submitted to the court without a jury upon an agreed statement of facts. The agreed statement of facts seems to be, as far as is necessary for consideration here, as follows: The defendant, Mrs. Bond, was in business at Sapulpa, and had in her employ one Edwin White. The plaintiff, Dr. Krugg, was a physician and surgeon, residing at Coffeyville, Kan. On the 11th day of July, 1919, White informed the defendant that he had a sick child upon whom a surgical operation was necessary, and asked her to lend or advance him the sum of $100 to pay the doctor for this operation. The defendant thereupon gave her check to White in the sum of $100, payable to Dr. Krugg, the plaintiff, which is quoted above. White thereupon took the check to Dr. Krugg, who, upon receiving the check, thereupon and on the same day performed the operation. On the 14th day of July, 1919, the check was deposited by Dr. Krugg, who indorsed the same, in the Condon National Bank of Coffeyville, Kan., and on the 16th day of July, 1919, the same was presented to the American National Bank on which it was drawn, and payment was refused on the ground that payment was stopped. On the 21st day of July, Mrs. Bond wrote Dr. Krugg the following letter, which was a part of the stipulation:

"Sapulpa, Okla., July 21, 1919. Dr. A. A. Krugg, Coffeyville, Kan. Dear Sir: Am writing you in regard to the canceling of the check. I made payable to you to the

amount of $100 July 11th. This check was given in good faith, but since that time have had business and financial differences with Mr. Edward White which is the cause of me having to do this to protect ourselves. Yours respt. Mrs. Oscar Bond."

Upon the agreed statement of facts the trial court entered judgment for the plaintiff against the defendant for the amount sued for. The defendant appeals and presents for reversal that:

"The payee of a negotiable instrument cannot be a bona fide purchaser under the Uniform Negotiable Instrument Act."

It does not seem to be disputed that the statement quoted is a correct declaration of law. There seems to be considerable conflict in the decisions of the various state courts upon this question; but in this jurisdiction it seems to be no longer an open question. But, as we understand the facts as agreed upon, it is not a question of the application of the Negotiable Instruments Law. There was no negotiation of the check until it passed from the hands of Dr. Krugg. Nor can it be denied that Mrs. Bond had the legal right to stop payment on her check as between herself and the bank. It seems to be well settled that the drawer of a check has the right to stop payment of the check. The check is an order to pay money, and if the drawer changed her mind about the matter and gave subsequent orders to not pay, the bank must respect the later orders, but this does not at all mean that the drawer of the check might not be liable to some person into whose hands the check passes. The defendant might purchase goods and deliver a check in payment and her bank might know such fact, and yet the bank must respect her orders when she tells it to refuse payment on the check. As between the merchant and the bank, the merchant has no rights, but still the drawer would not be relieved from paying the merchant.

The proposition presented here seems to be controlled by well-known principles governing contracts. The question here is whether or not the defendant is primarily liable to the plaintiff for the operation performed for White. It is admitted that defendant did not know Dr. Krugg, and had nothing to do with him so far as the operation was concerned; but it seems to us that, under the agreed statement of facts, she is in no better position than she would have been had she accompanied White to the doctor's office and there given the check before or after the operation to pay for the services, or had told the doctor to perform the operation and charge the bill to her. The defendant knew whom she gave the check to, and for what purpose, and the agreed statement of facts shows that the doctor accepted the check tendered to him in payment for services and the services were rendered. The check was for $100; and since there is no complaint about an overcharge or that the services were not rendered, we must presume that the doctor performed $100 worth of service for the check. It seems, however, to be a matter of no consequence in this case whether the court should hold that the check delivered to the doctor created a primary liability upon the part of the defendant to make good on the check, or whether she promised to pay the debt of White. The check was in writing, and in the nature of a promise to pay, and would take the matter out of the statute of frauds; but we are inclined to think that no question of secondary liability is presented. It is a matter of primary liability. The defendant said to the doctor by means of the check: "You perform the operation. Here is my check to pay for your services." The doctor accepted the check and performed the operation. The liability of the defendant was created then, no difference what happened afterwards between defendant and White. Defendant says she gave the check in good faith, and there seems to be no doubt but that the services were rendered in good faith. Giving the check, knowing the purpose for which it was to be used, amounted to a promise to pay the amount of the check if the services were rendered. The only way for defendant to have been relieved from the effect of the obligation created was to have advised the doctor the bill would not be paid in advance of the services being rendered. This was not done. Defendant had a right to stop payment of the check by her banker, but she could not thereby change her situation so far as her liability to the payee is concerned. The fact that the services were rendered to White instead of to defendant is not controlling. It is not an open question as to whether one person may bind himself for the debt of another by an original promise to pay. Under the agreed statement of facts the defendant made herself primarily liable to plaintiff in the sum of $100. The check was delivered just as she intended it should be. It was accepted by the plaintiff and the services were rendered, and from that time it was a fixed contractual liability. Defendant could stop payment on her check, but she could not thereby repudiate her contract to pay for services rendered upon her order to her

banker to pay the bill. Stopping payment on the check could no more affect her liability than if the bank had refused to pay because she had no funds there, and the defendant notified that the check was dishonored.

The views herein expressed are supported by the following cases: May v. Roberts, 28 Okla. 619, 115 Pac. 771; Lindly v. Kelly, 47 Okla. 328, 147 Pac. 1016; Grantz v. Jenkins, 73 Okla. 205, 175 Pac. 527; Bank of Venice v. Clapp (Cal.) 121 Pac. 298; Brown v. Cow Creek Sheep Co. (Wyo.) 126 Pac. 886; Patterson v. Oakes (Iowa) 14 A. L. R. 559; Usher v. Tucker, 217 Mass. 441, L. R. A. 1916F, 826.

The judgment is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 27 C. J. p. 144, § 30.