Deane GILL, Plaintiff in Error,

v.

Jackie YOES, Defendant in Error.

No. 38822.

Supreme Court of Oklahoma.

Jan. 24, 1961.

As Amended March 20, 1961.

Rehearing Denied March 21, 1961.

C. Harold Thweatt, Oklahoma City, Embry, Crowe, Tolbert, Boxley & Johnson, Oklahoma City, of counsel, for plaintiff in error.

Washington & Thompson, Oklahoma City, for defendant in error.

PER CURIAM.

The plaintiff in this case, Deane Gill, was the owner of an airplane which he

had for sale. A man by the name of C. J. Hobson desired to buy this plane from Gill. The price of the plane was $8,000. Hobson agreed to buy the plane. He got the defendant Jackie Yoes to draw a draft on the Phoenix Savings and Loan Company of Muskogee, Oklahoma, in favor of Gill and gave the draft to Gill in payment for the plane. The defendant Jackie Yoes had no money in the Savings and Loan Company but had made application to it for a loan on property she owned but none was made to her. The draft was turned down by the Savings and Loan Company. Title to the plane was taken in the name of the defendant and application for registration in defendant's name was made. After the delivery of the plane Hobson took and flew it away and it was later destroyed in an accident. Soon after the draft was drawn it was presented for payment which was refused. Plaintiff immediately got in touch with the defendant and demanded that she make the draft good. This she refused to do, so the plaintiff brought suit on the draft.

The defendant claimed that she had nothing to do with the purchase of the plane except that she did sign the draft for $8,000 to pay for it; that she knew nothing about the dealings between Hobson and plaintiff; that she had no need for a plane and that she did not buy it. She did testify that she did try to borrow money from the Phoenix Savings and Loan Company on her property in Stigler, Oklahoma, but the loan was never completed. Defendant also asserted that there was a conspiracy between Hobson and plaintiff to defraud her of $8,000.

The case was tried to a jury and a verdict was rendered for the defendant. The plaintiff had moved for a directed verdict at the close of the defendant's case.

The plaintiff raises three propositions for reversal which are as follows:

"Judgment should have been entered for the plaintiff as a matter of law."

"The Court erred in refusing certain documentary evidence."

"The Court erred in instructing the jury."

■ We think that proposition One disposes of this case so we will only discuss it. The instrument sued upon was a bill of exchange. 48 O.S.1951 § 281, defines a bill of exchange as follows:

"A bill of exchange is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a sum certain in money to order or to bearer."  `

■ There is a presumption of consideration. 48 O.S.1951 § 71, provides:

"Every negotiable instrument is deemed prima facie to have been issued for a valuable consideration; and every person whose signature appears thereon to have become a party thereto for value."

Consideration is defined by 48 O.S.1951 § 72, as follows:

"Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time."

■ By giving a negotiable instrument, the maker becomes liable according to the tenor of the instrument. 48 O.S.1951 § 141, provides:

"The maker of a negotiable instrument by making it engages that he will pay it according to its tenor; and admits the existence of the payee and his then capacity to indorse."

48 O.S.1951 § 142, specifically deals with the liability of a drawer of the instrument. It provides in part:

"The drawer by drawing the instrument admits the existence of the payee and his then capacity to indorse; and engages that on due presentment the instrument will be accepted and paid, or both, according to its tenor, * * *"

**508**

There is no distinction between the liability of the drawer of a check and the liability of the drawer of a bill of exchange. 48 O.S.1951 § 402, provides:

"A check is a bill of exchange drawn on a bank, payable on demand. Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check."

The defendant in paragraph five of her answer alleges all of such transactions were the result of a conspiracy between plaintiff and C. J. Hobson. There is no evidence to support that allegation. There is no question in this case that the defendant executed the draft involved herein. It was on the strength of this draft that the airplane was turned over to Hobson. If this draft had not been delivered to plaintiff certainly he would not have executed the bill of sale and transferred the airplane.

The defendant by her answer injected into this case the proposition that the draft given for the plane was for the benefit of a third party, one Hobson. It is really immaterial whether the draft was given for the purchase of the plane by either Hobson or the defendant just so long as it was given. We think that Haffner v. First National Bank of Seiling, 152 Okl. 169, 5 P.2d 351, 354, is controlling here and the following language is pertinent:

"Where a benefit is conferred on a third party and a detriment is suffered by the payee of a note at the instance of the maker thereof, it will be sufficient 'consideration' to support the note, even though the maker thereof received no personal benefit by reason of the execution and delivery thereof."

This case was followed in Lacy v. Edwards, 170 Okl. 458, 41 P.2d 64, where a defendant gave his personal note in order to obtain funds to make a down payment on an automobile which a third person was buying. See also Rudolph Wurlitzer Co. v. Rossman, 196 Mo.App. 78, 190 S.W. 636; Bond v. Krugg, 115 Okl. 222, 242 P. 559 and Keist v. Cross, 118 Okl. 142, 247

P. 85. Defendant represented that she was putting the $8,000 into the transaction and she cannot avoid liability simply because the draft was not honored.

The judgment is reversed with directions to the trial court to render judgment for the plaintiff for $8,000, with interest thereon from July 5, 1957, at the rate of six per cent (6%) per annum, plus the costs of the action.

It is so ordered.

The Court acknowledges the aid of Supernumerary Justice Corn in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in Conference, the foregoing opinion was adopted by the Court.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.