## Verdigris River Land Co. v. Stanfield *et al.*

### No. 103. Opinion Filed November 11, 1909.

### (105 Pac. 387.)

**CORPORATIONS—Foreign Corporations—Contracts—Compliance With Requirements to do Business.** That part of the provision of law pertaining to foreign corporations, in force in the Indian Territory prior to statehood, which provides that if any foreign corporation shall fail to file its certificate over the hand and seal of the company in the office of the United States Court of Appeals of the Indian Territory. designating a resident agent where the United States Court of Appeals of the Indian Territory is held upon whom service of summons and other process might be had, and stating the principal place of business of such corporation in the Indian Territory, and that part of said act which provides that, if any foreign corporation shall fail to comply with the foregoing provision, all its contracts with citizens and residents of the Indian Territory shall be void as to the corporation, and no United States court in the Indian Territory shall enforce the same in favor of the corporation, do not have relation to contracts of employment entered into between the corporation and its fiduciary agents in another state before the corporation commenced to do business in the Indian Territory.

(Syllabus by the Court.)

*Error from District Court, Craig County; T. L. Brown, Judge.*

Action by the Verdigris River Land Company against Wade S. Stanfield and another. Judgment for defendants, and plaintiff brings error. Reversed and remanded, with directions.

*Seymour Riddle* and *W. E. Clapham,* for plaintiff in error.— Citing: Beale on Foreign Corporations, § 141; 2 Morawetz on Private Corporations, § 665; 19 Cyc. 1306; *U. S. Express Co. v. Lucas,* 36 Ind. 361; *Rockford Ins. Co. v. Rogers,* 9 Colo. App. 121.

*William P. Thompson* and *Flynn, Ames & Chambers,* for defendants in error.

KANE, C. J.    This was a suit in equity, commenced by the plaintiff in error, a corporation organized under the laws of the state of Indiana, against the defendants in error, Wade S. Stanfield, a resident of Oklahoma, and David W. Henry, a resident of Indiana. The petition was in three paragraphs, the general allegations of each being to the effect that in the month of July, 1904, the defendant Henry interested a few of his friends at Sullivan and Terre Haute, Ind., in making some investments in lands in what was then the Cherokee Nation, Ind. T., and organized a copartnership, which was afterwards, on the 14th day of September, 1904, incorporated under the laws of the state of Indiana under the name and style of Verdigris River Land Company, with the defendant David W. Henry as its president, in which position he acted until January 1, 1907; that immediately after the formation of the copartnership, and in the month of July, 1904, the copartnership through the defendant Henry, in the city of Terre Haute, Ind., employed the defendant Stanfield to purchase lands for it in the Cherokee Nation, Ind. T., and as recompense for such services agreed to furnish the purchase money, and pay all his necessary expenses, and give him an oil and gas mining lease covering all the lands so purchased; that, at the time of said employment, the defendant Henry represented to his associates and copartners that he could secure the services of said Stanfield upon said terms, and recommended such employment accordingly; that the association or copartnership during the month of July, August, and up to September 14, 1904, forwarded a part of the purchase money of said land; that after the copartnership was incorporated on September 14, 1904, the company renewed and continued this employment, and continued to advance money to its agent, the defendant Stanfield, until about the sum of $14,000 had been furnished; that after this money had all been furnished, part of it by the copartnership and part of it by the corporation, the defendant Stanfield, acting as the agent of said company and copartnership, had purchased certain lands in the Cherokee Nation in the name

of said company, the deeds and conveyances to which were turned over, and the company, in turn, executed the oil and gas leases covering said lands agreeable to the conditions of said employment; that immediately after this transaction, and in pursuance of a secret agreement between Henry and Stanfield, the defendant Stanfield assigned to the defendant Henry an undivided one-half interest in these oil and gas leases without any consideration save and except as a part of said secret understanding between them at the time of the employment of the defendant Stanfield by Henry acting for his partners and associates in the beginning of the transaction; that about this time the plaintiff discovered that the defendant Stanfield had purchased with its money and the money of the copartnership about 520 acres of land, the title to which the defendant Stanfield had taken in his own name, and at the time of the commencement of this action still held in his own name and upon demand refused to convey; that said Stanfield as such purchasing agent has never furnished to the plaintiff any receipts, checks, or vouchers showing the amounts expended by him in the purchase of said lands, but in September, 1906, rendered to the company a false and fraudulent general statement of the amounts he claimed to have expended, which was at the time believed to be correct by the plaintiff company and by it accepted as true and correct; that, instead of settling fairly and honestly with the company, the defendants conspired together to cheat, wrong, and defraud said corporation, and, for the purpose of giving said Henry a beneficial personal interest in all lands which said Wade S. Stanfield might purchase for said company, said defendants at said time mutually agreed that the said defendants should share equally and hold jointly the oil and gas mining lease or leases which the said company was bound to execute in said agreement to the said Wade S. Stanfield, and that each of the defendants should enjoy the profits therefrom; that pursuant to the conspiracy between the defendants, the said Stanfield did on the 30th day of September, 1905, duly convey, assign, and transfer to the defendant, David W. Henry, an undivided one-half interest in all oil, gas, and mineral substances in and under all of the lands purchased under his em-

ployment, without any consideration paid or agreed to be paid, directly or indirectly, save and except the employment of the said Wade S. Stanfield by the said David W. Henry, president of the Verdigris River Land Company, and the consideration paid by said company to the said Wade S. Stanfield for the services rendered hereinbefore stated; that the defendants are each the owners of record of an undivided one-half interest in said oil and gas mining leases executed by the plaintiff. The prayer for relief reads as follows:

"Wherefore, the plaintiff prays that an account be taken of said trust property, and of the cash, rents, income, royalty, and profits thereof, which have come or should have come into the hands of the defendant David W. Henry, and that he be required to account for and pay the same to the plaintiff; that the defendants, David W. Henry and Wade S. Stanfield, be required to account with the plaintiff for all moneys which have been turned over to them by the plaintiff herein as hereinbefore set out, and the plaintiff have judgment against the defendants for $50,000, and that the defendant David W. Henry be required to convey, assign, and transfer the undivided one-half interest in the oil and gas mining leases covering the above-described real estate, which he obtained and secured from his codefendant. Wade S. Stanfield, as herein alleged, to the plaintiff, and, upon his failure so to do, that a commissioner be appointed to make said conveyance; and that the defendants, Wade S. Stanfield and David W. Henry, be required to convey all the real estate hereinbefore described and held by them or either of them which was purchased with the plaintiff's money, as hereinbefore set out, to the plaintiff, and, upon their failure so to do, that a commissioner be appointed to make said conveyance; and for all other proper and necessary relief."

The foregoing general statements of the allegations of the petition are sufficient to show the relation between the parties to the suit, the nature of the contract under which the alleged liability arose, and to present the only question for review which arose upon the court below sustaining a demurrer to the petition. After the petition was filed, the court upon motion of the defendants required the plaintiff to make its petition more definite and certain by showing when and where and how plaintiff was authorized to do business in the Indian Territory by setting out the day on which it

filed its certificate with the clerk of the Court of Appeals at South McAlester; and the plaintiff excepted to this ruling of the court, but complied with the order by inserting an allegation in its petition as follows:

"That on the 3rd day of March, 1906, said company, by its certificate, under the hand and seal of the president of said company, filed in the office of the clerk of the United States Court of Appeals for the Indian Territory, designated an agent, who resided at South McAlester, Ind. T., where the United States Court of Appeals is held, upon whom service of summons and other process may be made."

The petition was sufficient without this allegation; the presumption of law being that a foreign corporation suing outside the state of its creation has complied with the domestic laws, but as the plaintiff in compliance with the order of the court inserted this amendment, and as the petition as it stands before us no doubt states the facts in relation to the filing of the certificate and appointment of the agent, we do not believe that this error could be of such a prejudicial nature as to warrant a reversal of the case. So we will treat the petition as amended in considering the ruling of the court below in sustaining the demurrer to it. The demurrer was sustained on the ground that the plaintiff as a foreign corporation did not file the certificate over the hand and seal of the company in the office of the clerk of the United States Court of Appeals of the Indian Territory designating a resident agent where the United States Court of Appeals of the Indian Territory is held, upon whom service of summons and other process might be had, and stating the principal place of business of such corporation in the Indian Territory, before it began business in the Indian Territory and before it made the contract sued on, as required by the law relating to foreign corporations transacting business in the Indian Territory.

Counsel for defendants contend that all the transactions involved in this case were completely performed before the land company had a right to transact business involving the subject-matter of the Stanfield contract, and therefore falling within the inhibition of section 5 of the foregoing act (Act Feb. 18, 1901, c.

379, 31 Stat. 795), which provides that, if any foreign corporation shall fail to comply with the provisions of the foregoing section, all its contracts with citizens and residents of the Indian Territory shall be void as to the corporation, and no United States court in the Indian Territory shall enforce the same in favor of the corporation; it being admitted that the petition otherwise stated facts sufficient to require an accounting.

We have examined with care the authorities cited by counsel for defendants in error to sustain their position, and have come to the conclusion they are distinguishable from the case at bar. The principle laid down in all of these cases is that, when a contract is illegal and prohibited by law, no action can be maintained upon it in law or equity, either to enforce its obligations or secure its fruits to either party, and, where a party cannot maintain an action without showing an illegal act on his part, he must fail in his suit. A case that is as illustrative of counsel's contention as any of the many cited by them is *Ruemmeli v. Cravens,* 13 Okla. 342, 74 Pac. 908. In this case Ruemmeli, a nonresident, employed Cravens as his agent to sell intoxicants at wholesale within the territory. Cravens procured a license, conducting the business in his own name without disclosing his agency for Ruemmeli. After transacting the business in this way for some time, an accounting was had between the parties. and Cravens was found to be indebted to Ruemmeli. It was held in an action by Ruemmeli for a balance due him that he could not recover even after alleging that Cravens had embezzled the money shown by the accounting to be due him, and misled and defrauded him in stating the account. The decision was based upon the proposition that Ruemmeli did not have a license to sell intoxicants in Oklahoma, and, being a nonresident, could not procure one, and that Cravens had procured it as agent for him, which was not permitted by the law. In the opinion, distinguishing the principle involved from the rule laid down in *Planters' Bank v. Union Bank,* 16 Wall. 483, 21 L. Ed. 473, Mr. Justice Pancoast says:

"It is plain to be seen that the present case does not fall within this rule. The plaintiff cannot recover in this case without the aid

of the illegal transaction. This action is in the nature of an accounting between the plaintiff and defendant. Allegations of fraud, embezzlement, and bad faith generally are made against the defendant, and the court, in order to arrive at the fact of whether or not there is any money in the hands of the defendant, as agent of the plaintiff, unaccounted for, must investigate the entire transaction. This the court will not do, but will leave the parties where it finds them. To do otherwise, courts would become auxiliary to the consummation of violations of the law."

It is obvious that the transactions which the court would need to inquire into in order to determine the questions involved in the case at bar are not illegal transactions in the sense that selling liquor without license is. The statute under consideration in this case requires foreign corporations before beginning to carry on business in the Indian Territory to do certain things, and, if they fail to comply with the statute, all their contracts with citizens and residents of the Indian Territory shall be void as to the corporation, and no United States court in the Indian Territory shall enforce the same in favor of the corporation. The transaction thus necessary to inquire into in order to compel the agents of the corporation to account to them would be the contracts between the corporation and the citizens and residents of the Indian Territory that were made in relation to the lands and money in controversy. These transactions were not void except at the option of the citizens and residents of the Indian Territory with whom they were made, and, as far as the record shows in this case, they are not complaining. The defendants purchased certain lands from these citizens and residents of the Indian Territory with money belonging to the corporation, taking the deeds in the name of the defendant Stanfield, who thereafter conveyed an undivided one-half interest in them to Henry. The fiduciary relation of the defendants to the corporation is admitted; one Henry being the president, and Stanfield an agent employed for the purpose of making the purchases. The contract of the corporation with its agent, Stanfield, which they claim to be void and under which they seek to avoid an accounting, is a contract of employment between Stanfield and the corporation, executed in the state of Indiana. We are of

the opinion that the part of the provision pertaining to foreign corporations which provides that unless they comply with the provisions of the law in relation to filing their certificate, etc., all its contracts with citizens and residents of the Indian Territory shall be void as to the corporation, does not have reference to contracts of employment entered into between the corporation and its fiduciary agents; the purpose of the statute obviously being to protect citizens and residents of the territory in transacting business with foreign corporations, and not to offer opportunity to the fiduciary agents of foreign corporations to neglect to comply with the law, and then exploit the corporation. The corporation must act through its agents, and would be a helpless entity, indeed, if its chief executive officer could by his neglect to comply with a provision of the law enrich himself, and then find protection behind the statute.

Mr. Chief Justice Berkshire, in *Rehm et al. v. German Ins. & Savgs. Institution of Quincy,* 125 Ind. 135, 22 N. E. 173, in discussing a similar contract of a foreign corporation with its agents, says:

"But their cause of action did not arise out of any business transaction within the purview of the statute. The business contemplated is such as an insurance company is authorized to transact after it has complied with the conditions imposed by the statute, and which is forbidden until such compliance. The business contemplated is that of insurance. That is the subject to which the statute relates. The statute contemplates a company having agents in the state, and relates to such business as they may do after the company has complied with its conditions. A compliance with the requirements of the statute, and the the appointment of agents, are preliminary conditions to the business contemplated. The contract sued upon is not a contract such as will ordinarily be intrusted to a mere agent of the company, but one ordinarily executed by the company itself through its general officers. It has no connection with the ordinary business of insurance, but is preparatory to such business. This contract might have been entered into in the state of Illinois or elsewhere, and, if executed in Indiana, it is none the less a valid contract because of the act of 1883 (Elliott's Supp. § 993). The contract, is an ordinary common-law contract, whereby the appellants agree to

serve the appellee in a particular manner' for a certain compensation. We think the action is controlled .by the rules of the common law."

The appointment of an agent to transact the company's business was not doing business within the meaning of the statute. The appointment of officers and agents is necessarily a preliminary step to engage in business. If the appointment in Indiana of Stanfield was an illegal act, so was the election of the president and other officers, as the company was organized and the officers all elected there. The following authorities are in point on this proposition: *Wilson v. Ohio Farmers' Ins. Co.* 164 Ind. 462, 73 N. E. 892; *Sullivan v. Sheehan* (C. C.) 89 Fed. 247; *Miller v. Williams et al.,* 27 Colo. 34, 59 Pac. 740; *Hogan v. City of St. Louis et al.,* 176 Mo. 149, 75 S. W. 604; *Galena Min. & Smelting Co. v. Frazier,* 20 Pa. Super. Ct. 394.

Entertaining this view of the case, it follows that the judgment of the court below must be reversed and the cause remanded, with directions to overrule the demurrer and take such further proceedings, not inconsistent with this opinion, as may be necessary.

All the Justices concur.