## FRUIT DISPATCH CO. v. WOOD *et al.*

No. 3121.    Opinion Filed May 12, 1914.

(140 Pac. 1138.)

1.  **CORPORATIONS—Foreign Corporations—Duties—Interstate Commerce.**  A foreign corporation, while engaged in interstate commerce within the state with a resident thereof, is not subject to the provisions of the Act of March 22, 1909 (Sess. Laws 1909, p. 147), fixing the duties of foreign corporations.

2.  **COMMERCE — Interstate Commerce—Power to Regulate.**  The exclusive power to regulate commerce between the states is, by the federal Constitution, vested in Congress, and such authority is expressly recognized by the foregoing act, which provides: "This act shall not be effective in cases wherein its enforcement would conflict with the powers of Congress or the federal laws to regulate commerce between the states." Sess. Laws 1909, c. 10, art 1, sec. 3.

(Syllabus by Sharp, C.)

*Error from Superior Court, Pottawatomie County;*
*George C. Abernathy, Judge.*

Action by the Fruit Dispatch Company against W. B. Wood and another, copartners, doing business under the name of the Wood Produce Company.  A demurrer to plaintiff's evidence was sustained, and he brings error.  Reversed and remanded for a new trial.

*Shartel, Keaton & Wells, Edward Howell,* and *Eugene W. Ong,* for plaintiff in error.

Opinion by SHARP, C.  This was an action begun in the superior court of Pottawatomie county by the Fruit Dispatch Company, a foreign corporation organized and doing business under the laws of the state of New Jersey, against W. B. Wood and R. H. Wood, copartners doing business under the name of Wood Produce Company, to recover the purchase price of a car load of bananas, sold by plaintiff to defendant.  The answer, among other things charged that plaintiff was a nonresident corporation transacting business in the state of Oklahoma, and

had not complied with the laws of the state governing foreign corporations, by filing in the office of the Secretary of State a certified copy of its charter or articles of incorporation, and paid the fees required by law, and had not appointed an agent upon whom service of process could be made. At the conclusion of plaintiff's testimony, the defendant demurred thereto, which demurrer was in part sustained and plaintiff's action dismissed, for the reason that the plaintiff had failed to comply with section 1540, Comp. Laws 1909 (sections 1335, 1336 and 1337, Rev. Laws 1910).

Plaintiff's evidence showed that it was incorporated under the laws of the state of New Jersey, and was engaged in the importation and sale of perishable tropical fruits, principally bananas; that all commodities handled by it were consigned directly to it from foreign countries, and the consular invoices were made out accordingly; that as importer, it entered the bananas and other tropical products at the ports of importation in this country, and sold the same immediately after arrival, in wholesale lots, and in the form and shape they were brought into the country; that its principal office in the United States was in New York City, with branch offices in various cities; that each branch office had the name of the company on the door, and a resident manager in charge, who solicited business in his territory and forwarded orders for fruit to the general offices at New York or New Orleans for acceptance. Most of these orders were received prior to the arrival of the fruit in the United States, and, under the company's "Uniform Conditions Governing Sales," were accepted by shipment of the fruit to the various purchasers, immediately after such arrival; that the uniform conditions which settled in advance the terms applying to all sales were necessary on account of the hazardous nature of the business of supplying the northern markets with perishable fruits from the tropics. One of plaintiff's branch offices was located at Oklahoma City, in charge of C. S. Bell, who on the 26th day of February, 1910, solicited of defendants and obtained from them an order for one rolling car of Chiriqui nine hand bananas, which order was by Bell wired to the home office at New Orleans, which in turn on

the same day wired its acceptance of defendant's offer. From the testimony it appears that it was the practice of the southern division of the plaintiff company to advise its branch offices when a cargo of bananas was expected to arrive, and to instruct its local representatives to solicit orders for bananas at prevailing prices for fruit, delivered at the seaboard, either at New Orleans or Mobile. When, however, sufficient orders were not received at seaboard points for an entire cargo, the bananas being highly perishable, were immediately loaded into cars and started "rolling" from the seaboard. If shortly after they left the seaboard the order was received from the territory towards which the car was "rolling," the New Orleans office issued to the railroad the necessary instructions diverting the shipment to the consignee. The car of bananas in controversy left the wharf of the Mobile & Ohio Railroad at Mobile, 1:55 p. m., February 24, 1910, in car FGE 11026. This car reached Memphis, Tenn., over the Frisco from Tupelo, Miss., at 2:10 p. m., February 25th, where the car was inspected, ventilated, and transferred to the Rock Island Railway, going out on the first train at 9:45 p. m., on the day of its arrival. At the time the order was taken, the train containing the car load of bananas was between Little Rock and Booneville, Ark. Plaintiff company maintained no storage or warerooms in Oklahoma. Collections made from its customers were deposited in the Western National Bank of Oklahoma City, and by said bank at stated intervals transferred to the company's New York office. No one connected with its branch office within the state had any authority to check against said deposits, and its local employees were paid upon vouchers sent from New York City. All sales made in the southern division were under the direct authority and control, and subject to the approval of the New Orleans office.

Was the plaintiff at the time engaged in the transaction of business within this state, within the meaning of sections 1540, 1541, 1542, 1543, Comp. Laws 1909 (Rev. Laws 1910, secs. 1335-1341), prohibiting the transaction of business within this state by corporations which have failed or neglected to comply with the provisions of said act? By the latter part of section 1542,

*supra,* it is provided that said act shall not be effective in cases where its enforcement would conflict with the powers of Congress, or the federal laws regulating commerce between the states. Whatever the purpose of this provision may have been, obviously it recognizes a proper limitation upon the right of the state, where matters of commerce between the states are involved. Such is the question here presented. From the evidence there can be no question but that plaintiff was engaged in interstate or foreign commerce, and therefore it was not required to comply with the provisions of the act in question, relating to foreign corporations doing business in this state. *Freeman-Sipes Co. v. Corticelli Silk Co.,* 34 Okla. 229, 124 Pac. 972; *Cooper v. Ferguson,* 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137. The question has frequently been before this court where, following a long line of authorities from the Supreme Court of the United States, it has been held that whatever power may be conceded to the state to prescribe conditions upon which foreign corporations may transact business within its limits, it cannot be admitted to extend so far as to prohibit or regulate commerce among the states; for that would be to invade the jurisdiction which by the terms of the Constitution of the United States is conferred exclusively upon Congress. The federal Constitution having given to Congress the power to regulate commerce, not only with foreign nations, but among the several states, that power is necessarily exclusive wherever the subjects of it are national in their character, or admit of only one uniform system or plan of regulation. *Robbins v. Taxing District of Shelby County,* 120 U. S. 489, 7 Sup. Ct. 592, 30 L. Ed. 694; *Hannibal, etc., Ry. Co. v. Husen,* 95 U. S. 465, 24 L. Ed. 527; *Philadelphia, etc., Ry. Co. v. Pennsylvania,* 15 Wall. 232, 21 L. Ed. 146; *Caldwell v. State of North Carolina,* 187 U. S. 622, 23 Sup. Ct. 229, 47 L. Ed. 336; *Western Union Tel. Co. v. State of Kansas,* 216 U. S. 1, 30 Sup. Ct. 190, 54 L. Ed. 355. To the same effect are the decisions of this court, in *Cooper v. Ft. Smith & Western R. Co.,* 23 Okla. 139, 99 Pac. 785; *Chicago Crayon Co. v. Rogers,* 30 Okla. 299, 119 Pac. 630; *Harrell v. Peters Cartridge Co.,* 36 Okla. 684, 129 Pac. 872, 44 L. R. A. (N. S.) 1094.

For the reason shown, it was error for the court to sustain defendants' demurrer to plaintiff's evidence, and to dismiss plaintiff's action.

The judgment of the trial court should therefore be reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.