OUTBOARD MARINE CENTER, a partnership composed of Rex Bates and R. A. McDerby, dba Outboard Motor Center, Plaintiff in Error,

v.

LITTLE GLASSES CORPORATION, Defendant in Error.

No. 38298.

Supreme Court of Oklahoma.

March 17, 1959.

As Amended May 4, 1959.

Rehearing Denied May 5, 1959.

Reuel W. Little, Madill, for plaintiff in error.

. Wilson Wallace, Ardmore, for defendant in error.

BERRY, Justice.

Rex Bates and R. A. McDerby, doing business as partners under the trade name "Outboard Marine Center", hereafter referred to as "B & M", brought suit against Little Glasses Corporation, hereafter referred to as "corporation", for $895.45, the purchase price of boat supplies which it alleges it sold to corporation.

This case and Yellow Jacket Boat Company, Inc., v. Little Glasses Corporation, Okl.Sup., 338 P.2d 1101, were consolidated for trial in the lower court. The parties waived a jury and tried the cases to the court. The trial court entered judgment for corporation. B & M filed a motion for new trial and upon same being denied, perfected this appeal.

In 1955 N. J. Barnett, hereafter referred to as "Barnett", purchased the Little Glasses Resort near Madill, Oklahoma. Corporation was organized for the purpose of operating this resort. At the outset the business done by Little Glasses was renting cabins, operating a cafe, selling fish bait and renting a few boats, which business will hereafter be referred to as "resort business" in order to distinguish said business from the business of buying and selling boats and boat supplies, which business B & M contends corporation also engaged in at said resort but which last-mentioned business corporation contends its manager, Roy B. Hart, hereafter referred to as "Hart", engaged in for his sole use and benefit.

Upon corporation being organized, Hart was employed as corporation manager to operate the resort and he was also made Secretary and Treasurer of corporation. In the contract of employment, which was in writing, it was provided that Hart should "be in general charge of Little Glasses Resort, personally managing same, devoting his best efforts and all necessary time required for the efficient performance of his duties".

Corporation does not question that Hart had general authority to conduct resort business. It insists, however, that Hart's authority did not extend to buying and selling boats and boat supplies. The trial court sustained corporation's contention in said particular and this appeal resulted.

B & M contends that Hart had corporation's express authority to purchase the boat supplies in controversy and B & M also contends that corporation accepted the benefits of the sales in controversy and having accepted the benefits will not be permitted to deny the agency of Hart who made receipt of the benefits possible. The trial court rejected said contentions.

A short time after Hart entered upon his duties as manager of the resort, which corporation continued to be operated under the name of "Little Glasses Resort", he, while assuming to act as corporation's agent, negotiated a dealership evidenced by an oral contract with Yellow Jacket Boat Company, Inc., hereafter referred to as "Yellow Jacket", to sell boats that the latter handled. Yellow Jacket intended to issue the dealership to corporation. As an incident to the boat business, Hart made arrangements with B & M to purchase boat supplies which B & M handled. To further the boat and boat-supply business, Hart made credit arrangements with a bank in Madill and opened a special checking account in his name. The bank did not consider that corporation was involved in said credit arrangements. Hart contends otherwise. Checks were at all times drawn on said special account in payment of boat supplies. The boat supplies in controversy were invoiced to "Roy Hart—Little Glasses Resort". The checks drawn on Hart's special account in payment of the said supplies were not honored.

Hart testified that Barnett knew about the boat dealership and the boat-supply arrangement and gave his full and complete approval of said arrangements. It suffices to say that if the trial court had found for B & M, Hart's testimony would unquestionably have supported the court's finding.

■ Barnett testified that upon learning that Hart was buying and selling boats and boat supplies, he advised Hart that corporation would not engage in said business and that if he, Barnett, were to engage in said business it would be through a separate corporation. B & M and Yellow Jacket did not make inquiry concerning the extent of Hart's authority to act for corporation and at no time communicated with any officer of corporation except Hart. The matter of whether Hart acted within the scope of his authority as corporation's agent in engaging in the boat and boat-supply business and the matter of whether Hart engaged in said business in his own behalf and not in behalf of corporation were questions of fact and the trial court's conclusion thereon must stand since supported by competent evidence.

■ A third person who deals with an alleged or assumed agent, has the burden in an action when said agent's authority is

put in issue, of proving the extent and scope of the agent's authority. The following will be found at 3 C.J.S. Agency § 317, pp. 257–258:

"A third person who has dealt with an alleged or assumed agent and in a subsequent action alleges or relies on the agency and seeks to hold or bind the principal for an act or contract of the agent has the burden of proving not only the existence and nature of the agency (See supra § 15b), but also its extent or scope; the burden is on him to prove the authority of the agent, the nature and extent or scope thereof, and that the act or contract in question is within the scope of the agent's authority, or in other words, that the agent was authorized to perform the act or enter into the contract in question."

■ If Hart conducted the boat and boat-supply business for his sole use and benefit and corporation had no interest therein, corporation would not be bound by his acts nor chargeable with Hart's knowledge. The following was said in the second paragraph of B. F. C. Morris Co. v. Mason, 171 Okl. 589, 39 P.2d 1, 43 P.2d 401:

"A corporation is not bound by the acts, nor chargeable with knowledge of one of its officers in respect to a transaction in which the officer is acting in his own interest."

There remains for consideration the matter of whether corporation knowingly ratified Hart's action in buying the boat supplies in controversy by accepting benefits accruing from said purchase.

Hart testified that proceeds accruing from the sale of boats and boat supplies were commingled with proceeds accruing from the resort business and were used in the resort business; that he delivered to a certified public accountant who officed in Madill records that would develop said facts. The certified public accountant was present at the trial but did not testify. Hart testified further that upon leaving corporation's services several months before these actions were tried, he left with corporation at the resort all records then in his possession which pertained to the resort business and the boat and boat-supply business. He also testified that the boat supplies in controversy were either sold or some of the supplies were sold and the remainder left at the resort.

■ The only testimony tending to overcome Hart's often-repeated statement that corporation benefited from the purchase of the boat supplies in controversy is Barnett's testimony to the effect that "not to my knowledge" the corporation didn't benefit, or that he could not "deny or agree" that the corporation benefited. The books and records of the resort business and of the boat and boat-supply business should tend to either prove or disprove that corporation benefited from Hart's purchase of the boat supplies in controversy. On cross examination Barnett was asked "Have you made any attempt to disprove this (referring to the foregoing subject matter) by the records" and he answered "No". Since we are of the opinion that the record before us conclusively establishes that corporation received and retained the benefits accruing from Hart's purchase of the boat supplies, the trial court erred in rendering judgment for defendant in No. 38,298.

■ In Oklahoma Title Co. v. Burrus, 172 Okl. 94, 44 P.2d 852, 853, we had this to say in the second paragraph of the syllabus regarding the actions of a principal in ratifying an unauthorized contract made by another in his behalf:

"2. It is not essential to a ratification that the principal have full knowledge of the conditions attached to the agreement made by one acting as agent without authority; but where the benefits of the unauthorized act are accepted without knowledge, and are retained after having knowledge, or after the happening of such events as would place a reasonably prudent person on inquiry which would discover full knowledge, ratification is accomplished and the principal is bound."

See also Lee v. Little, 81 Okl. 168, 171, 197 P. 449, 451.

█ Corporation will not be permitted to assert that it did not, in view of Hart's testimony, have notice of those things that it could have learned by an inspection of the resort premises and books and records in its possession. It was pointed out in Oklahoma Gas & Electric Co. v. Smith, 174 Okl. 529, 20 P.2d 1094 that when the facts warrant, a person may be charged with knowledge of facts which he could have discovered by the exercise of reasonable diligence. We believe that this rule should be applied in the instant case.

From an examination of the record in this jury-waived law action, or case of legal cognizance, we conclude that the trial court's judgment is not sustained by the evidence and is contrary to law and for said reason the case is remanded for a new trial.