865 F.2d 262
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Marvin WARNER, Plaintiff-Appellant,
v.
The CENTRAL TRUST COMPANY, et al., Defendants,
and
Federal Deposit Insurance Corporation, Receiver of Penn
Square Bank, N.A., Defendant-Appellee
 No. 87-4014.
 United States Court of Appeals, Sixth Circuit.
 Dec. 15, 1988.
 
 Before ENGEL, Chief Judge, BOGGS, Circuit Judge, and ROBERT M. McRAE, Jr., Senior District Judge.*
 PER CURIAM.
 
 
 1
 This appeal is from a final judgment entered on October 5, 1987 by the district court holding that Marvin Warner had ratified certain changes in his loan agreement with Penn Square Bank and was thus aware of the changes in the agreement. This judgment followed this court's reversal and remand of an earlier district court judgment in Warner v. Central Trust Co., 798 F.2d 167 (6th Cir.1986), to consider "whether [appellant] Warner knew or had reason to know of the alteration of the terms of the Equity Loan and through his silence assented to the change." Id. at 171.
 
 
 2
 * In the early 1980's, Marvin Warner invested in a limited partnership called High Plains Drilling Partners. This partnership was formed under Oklahoma law. Its purpose was to purchase oil drilling rigs from the general partner, High Plains Drilling Company, and lease them to drillers. Carl Swan, the owner of High Plains, was also a director of Penn Square.
 
 
 3
 Warner's total investment was $498,150. He paid half in cash; the other half was financed by a note from Warner to the partnership for $249,075. In order to secure its full operating capital, the partnership entered into an agreement with Penn Square Bank whereby Penn Square Bank loaned the rest of the money for the partners' indebtedness in exchange for a letter of credit from each of the partners representing 110% of their individually borrowed amounts. This loan was one of no recourse. Penn Square Bank could only rely on the letter of credit to repay the loan in case of default, as neither the partnership nor the individual partners were personally liable.
 
 
 4
 The terms of the loan as set out in the private placement memorandum, signed by Warner, were that the letter of credit was to represent 110% of the face value of the loan. Quarterly payments were to be made, with the balance due in four years. The interest rate was to be 3 1/2% above the prime rate.
 
 
 5
 The terms as originally set out in the prospectus were not the final terms of the loan, however. The subscription agreement between High Plains Drilling and Penn Square Bank indicated changes in some key terms. The terms of the loan agreement as set out in the Promissory Note and the subscription agreement between the partnership and the bank stated that the letters of credit were to be only for 100% of the face value of the loan and only for a term of two years, renewable for another two at the option of both parties. The loan was to be paid off in a lump sum at the end of two years, with an option to renew the loan for two years at the option of both parties. The interest rate of the loan in the subscription agreement was to be 1 1/2% above prime.
 
 
 6
 Marvin Warner entered into this partnership in 1980 and received a copy of this new subscription agreement. At one time Warner attempted to make a quarterly payment on the loan which was refused by the partnership because the partnership told Warner that the loan was current.
 
 
 7
 The partnership initially did well. With the collapse of the oil industry in 1982, however, the partnership was unable to meet its debts and defaulted on the loan from Penn Square Bank. Penn Square Bank in turn became insolvent and was taken over by the F.D.I.C. The F.D.I.C. refused to extend the terms of the note to the partnership and began to collect on the letters of credit.
 
 
 8
 Warner originally brought suit in the Hamilton County, Ohio, Court of Common Pleas to enjoin this collection. The case was then removed to federal district court. The district court ruled against Warner on all claims, and Warner appealed, arguing that he was not liable to the FDIC for this loan because there was a material change in the original terms of the loan made without his knowledge. This court remanded to the district court with instructions to determine whether Warner knew or should have known of the changes in the loan and assented to the changes by his silence. Warner, 798 F.2d at 171.
 
 
 9
 On remand, the district court concluded that under Oklahoma law there is ratification of an agent's action by a principal when the principal knowingly receives benefits from the actions of his agent. He also found that the facts of the instant case supported the conclusion that Warner knowingly received benefits from the actions of his agent, High Plains Drilling. The appellant raises three issues with respect to the district court's decision: 1) that the district court applied the wrong legal standard, 2) that the facts would not amount to a ratification under either standard, and 3) that the statute of frauds bars a finding of ratification. We explore each of these arguments below.
 
 II
 
 10
 In his brief, appellant argues that the district court incorrectly determined Oklahoma law as it relates to ratification. However, the appellant does not allege in what way the district court invoked an incorrect legal standard. Indeed, the appellant appears to agree with the district court's determination of what constitutes ratification under Oklahoma law.
 
 
 11
 Ratification in agency is an adoption or confirmation by one person of an act performed on his behalf by another. In Re Brown, 412 F.Supp. 1066, 1071 (W.D.Okla.1975). The essential elements of ratification recognized by the district court and accepted by the appellant are "(1) acceptance by the principal of the benefits of the agent's acts, (2) with full knowledge of the facts, and (3) circumstances or affirmative election indicating an intention to adopt the unauthorized arrangement." Ibid.; See also Statser v. Chickasaw Lumber Co., 327 P.2d 686 (Okla.1958). The knowledge requirement is satisfied if the principal retains benefits after a reasonably prudent person would have discovered the acts of the agent. C.H. Stuart, Inc. v. Bennett, 617 P.2d 879 (Okla.1980) (citing Outboard Marine Center v. Little Glasses Corp., 338 P.2d 1101, 1104 (Okla.1959)).
 
 
 12
 In C.H. Stuart, the issue was whether a parent corporation had ratified illegal personal sales of its agents by retaining the benefits of those sales. Though the court found no actual knowledge of the actions of its agents, the court held that C.H. Stuart had been put on notice of the actions because in that case the volume of sales recorded by its agents was high enough to warrant suspicion. C.H. Stuart, 617 P.2d at 881.
 
 
 13
 The district court held that Warner had ratified the actions of his agent because he received benefits from the change, and certain events during the course of the agreement would have put a reasonably prudent person on notice of the changes. The appellant disputes both of these findings.
 
 
 14
 * The district court found that a 10% reduction in the amount of the letter of credit, the reduction in the interest rate of the loan from 3 1/2% to 1 1/2% over prime, and the reduction in the term of the loan were clear benefits to Warner. The appellant weakly argues that none of these constituted a benefit to Warner because Warner had no knowledge of them. Appellant ignores the law's requirement that the only knowledge necessary is that a reasonably prudent person would have been put on notice. Therefore, a discussion of benefits must be confined to objective benefits, whether Warner had actual knowledge of them or not.
 
 
 15
 Appellant then argues that none of the benefits found by the district court are objective benefits. Though the benefit of a reduced loan term may be debatable, the objective benefits of a reduction in the letter of credit and the interest rate are clear. A reduction in the letter of credit from 110% to 100% puts less of Marvin Warner's money at risk and could be concluded a benefit by the district court. Likewise, it seems clear that the reduction in the interest rate was also a benefit to Warner. Appellant argues that the reduction in the interest rate was only because of an increased prime lending rate, and therefore, Warner would be paying as much or more interest under the new terms as under the old ones if the prime had not changed. However, it is obvious that Warner would have had to pay 2% more interest regardless of what happened to the prime rate if the terms of the loan had not been changed.
 
 
 16
 Appellant's argument that the court must look at the transaction as a whole is also without merit. Appellant offers no evidence that the change in the loan terms caused the default on the loan. The evidence on the record indicates that the Partnership was unable to make its payments to Penn Square Bank because of the downturn in the oil industry, a downturn which still exists. Therefore, even if the loan had been payable in four years instead of nineteen months, it would not have benefited Warner. The district court's finding that all the changes taken together were beneficial is not clearly erroneous.
 
 B
 
 17
 Appellant also argues that there was insufficient evidence for the district court to conclude that a reasonably prudent person in Warner's situation should have been aware of the changes in the note. The court concluded that Warner should have been put on notice of this change because he was informed of the changes in the letters of credit, and the tender of the first quarterly payment was refused.
 
 
 18
 With respect to the first of these findings, Warner argues that the changes in the letter of credit were not apparent because only the actual dollar amount was changed, and he would not notice that type of difference. It is undisputed that the difference in face amounts was over $20,000 on a letter of credit less than $300,000. The district court found that a sophisticated investor such as Warner should have noted this apparent discrepancy. We agree.
 
 
 19
 With respect to the district court's finding that Warner should have been alerted to changes in the terms of the loan because of the refusal of his first quarterly payment, Warner contends the loan as contemplated was to be paid out of rig rentals. He claims that when his tender was refused, he thought the loan had been paid out of the rig rentals, and therefore, the district court's conclusion that he should have been put on notice is wholly unsupported. However, Warner does not explain why he tendered any payment if he believed the money was to be paid out of the rig rentals. Additionally, Warner himself testified that the refusal of his payment would have been a red flag to most investors. The district court found this testimony and the fact that Warner was a sophisticated investor to be persuasive. This conclusion is not clearly erroneous. Even if Warner thought the tender of payment was refused because the partnership had paid it, the refusal of payment, the change in the letter of credit, and the fact that Warner actually received a copy of the subscription agreement with the new loan terms should have led a reasonably prudent investor to inquire further.
 
 C
 
 20
 In his brief, appellant also attempts to defeat the district court's decision by raising for the first time on appeal a statute of frauds issue. This issue should have been raised at the district court level. This court will not normally address an issue not raised in the district court, especially when it depends on a finding of fact. U.S. v. Baker, 807 F.2d 1315, 1321 (6th Cir.1987). Appellant's argument is without merit in any event.
 
 
 21
 Appellant relies on Yount v. Bank of Commerce, 172 Okla 65, 44 P.2d 874 (1935), which states that a guarantor's obligation cannot be changed except in writing. However, Oklahoma law also recognizes an exception to this rule whenever the main purpose of the promissor is to secure a personal benefit. Lindley v. Kelly, 47 Okla. 328, 147 P. 1015, 1017 (1915); Meinrath v. Collins-Deitz-Morris Co., 298 F. 377, 380 (8th Cir.1924) (Statute of frauds does not apply under Oklahoma law if the promisor has a personal or pecuniary interest in the outcome); Farmers & Merchants National Bank v. Lee, 192 Okla. 9, 132 P.2d 931 (1942). The partnership entered into the agreement with the bank in order to allow the individual partners more financing options. The letters of credit of the individual partners were the only recourse of the loan. Therefore, appellant secured a pecuniary benefit, and the statute of frauds would not apply to this change.
 
 III
 
 22
 Appellee F.D.I.C. asserts that regardless of this court's holding on the state law issue we are required to enforce the agreement pursuant to 12 U.S.C. Sec. 1823(e). Since we conclude that state law compels a decision upholding Marvin Warner's liability to the FDIC, it is unnecessary to consider the application of 12 U.S.C. Sec. 1823(e) in the present case. The decision of the district court is affirmed.
 
 
 
 *
 The Honorable Robert M. McRae, Jr., Senior United States District Judge for the Western District of Tennessee, sitting by designation