2008 OK CIV APP 85

**The ESTATE OF Robert T. STUART, Jr., deceased, Protestant/Appellant,**

v.

**STATE of Oklahoma ex rel. OKLAHOMA TAX COMMISSION, Respondent/Appellee.**

**No. 104,409.**

Court of Civil Appeals of Oklahoma, Division No. 2.

May 23, 2008.

Certiorari Denied Oct. 2, 2008.

State Auditor and Inspector informing the taxpayer of the provisions of this section.

**26.** Title 68 O.S.2001 § 3140, see note 23, supra.

Steven T. Ledgerwood, Norman, Oklahoma and Philip D. Hart, Alan G. Holloway, Keith E. Peters, McAfee & Taft, A Professional Corporation, Oklahoma City, OK, for Appellant.

Larry D. Patton, Assistant General Counsel, Oklahoma Tax Commission, Oklahoma City, OK, for Appellee.

JOHN F. FISCHER, Judge.

¶ 1 The Estate of Robert T. Stuart, Jr., deceased, appeals from a February 13, 2007, non-precedential Order of the Oklahoma Tax Commission, which adopted the Findings, Conclusions and Recommendations of the Administrative Law Judge (ALJ) who heard the Stuart Estate's claim for refund of certain estate taxes assessed by the Commission's Estate Tax Section. Based on our review of the record on appeal and applicable law, we affirm.

## BACKGROUND FACTS

¶ 2 The parties have stipulated to substantially all of the facts in this case, which were contained in the ALJ's Findings, Conclusions and Recommendations and need not be repeated here in their entirety. The issue that determines this appeal is a legal one: Is the interest held by Mr. Stuart at the time of his

death in a Texas limited partnership subject to Oklahoma estate tax to the extent that it included property in Oklahoma on which was operated an Oklahoma business known as the Stuart Ranch? [1]

¶ 3 The Stuart Ranch consists of 40,000 acres in southern Oklahoma on which cattle and American Quarter Horse breeding businesses are conducted. Some of this property has been in Mr. Stuart's family since 1868.

¶ 4 In May 2001, Mr. Stuart was diagnosed with terminal cancer. A former and long-time resident of Oklahoma, Mr. Stuart had become a resident of Texas approximately twelve years earlier. At that time, Mr. Stuart was the sole owner of the Stuart Ranch. In June 2001, he met with attorney Gary Fuller. That meeting resulted in the estate plan that generated the transactions relevant to this appeal. Those transactions include the following:

1. Mr. Stuart exchanged his ownership of Stuart Ranch for a membership interest in R.T. Stuart Ranch, L.L.C., a newly formed Oklahoma limited liability company. There were no other members of the Ranch LLC.

2. Mr. Stuart created a revocable trust to which he transferred all of his property wherever situated, including his interest in the Ranch LLC.

3. Mr. Stuart formed RTS Capital Corp., a Texas corporation, and caused his trust to acquire all of the stock of the corporation in exchange for the payment by the trust of $350,000.

4. RTS Capital paid the $350,000 to RT Stuart Family Enterprises, L.P., a Texas limited partnership, for a general partnership interest and a sharing ratio of 0.47%.

5. The trust transferred the substantial portion of its assets, valued at approximately $83,000,000, to Stuart Family Enterprises (hereafter the Texas Family Partnership) in exchange for a limited partnership interest and a sharing ratio of 99.53%. The trust

retained ownership of assets valued at approximately $14,000,000, including the buildings and their contents used in the operation of the Stuart Ranch, valued at approximately $700,000. Nonetheless, as a result of this transaction, the Texas Family partnership obtained ownership of all other assets of the Stuart Ranch.

6. The Texas Family Partnership, as sole member of the Ranch LLC, and Teresa Stuart Forst, one of Mr. Stuart's daughters, entered into an operating agreement by which Ms. Forst became the manager of the Ranch LLC.

¶ 5 Mr. Stuart died in August 2001. The Estate filed an Oklahoma estate tax return listing the gross value of the estate at approximately $11,000,000 based primarily on (1) the value of the buildings and their contents associated with the Stuart Ranch and which were owned by the trust, and (2) the other assets of the Stuart Ranch held by the Ranch LLC and owned by the Texas Family Partnership. This amount was excluded from the estate tax return filed for Mr. Stuart's estate in Texas.

¶ 6 After filing its Texas estate tax return, the Estate was notified that Texas intended to tax the entire value of Mr. Stuart's interest in the Texas Family Partnership, including the value of the Ranch LLC. The Estate filed a Request for Refund of the Oklahoma estate tax paid on the value of the Ranch LLC and appeals from the denial of that refund request.

## STANDARD OF REVIEW

■■■ ¶ 7 When the Commission acts in its adjudicative capacity to determine a taxpayer's protest of assessed taxes, its ruling will be affirmed on appeal if (1) the record contains substantial evidence supporting the facts upon which the order is based, and (2) the order is legally correct. *Dugger v. State*

---

1. The Estate does not contest the assessment of estate taxes for the value of certain buildings and their contents located on the Stuart Ranch and has paid those taxes. Further, the Commission has not appealed the ALJ's recommendation, adopted by the Commission, that estate tax may only be assessed on the value of the Stuart Ranch after recognition of a minority discount. Consequently, in this appeal, we deal only with the propriety of the estate tax assessed on the discounted value of the Stuart Ranch. The Estate has paid that tax as well and that amount is the subject of the Estate's claim for refund before the Commission.

*of Oklahoma ex rel. Oklahoma Tax Comm'n,* 1992 OK 105, ¶ 9, 834 P.2d 964, 968; *El Paso Natural Gas Co. v. Oklahoma Tax Comm'n,* 1996 OK CIV APP 69, ¶ 7, 929 P.2d 1002, 1005. Where the parties have stipulated to the basic facts, it is unnecessary for the appellate court to conduct a substantial review of the evidentiary record; the question is legal and involves deciding whether the Commission, in denying a refund, properly interpreted and applied the relevant statutory law to the stipulated facts. *Neer v. State ex rel. Oklahoma Tax Comm'n,* 1999 OK 41, ¶ 3, 982 P.2d 1071, 1073.

¶ 8 Because the relevant facts in this case have been stipulated, the legal issue in this appeal is whether the interest held by Mr. Stuart in the Texas Family Partnership is subject to Oklahoma estate tax to the extent that it included the Stuart Ranch property located in Oklahoma. The Commission determined that it is. "The Commission's legal rulings, like those made by a district court judge, are on review subject to an appellate court's plenary, independent and nondeferential reexamination. We hence review *de novo* the Commission's attribution of meaning to the critical part of the statutory text." *Blitz U.S.A., Inc. v. Oklahoma Tax Comm'n,* 2003 OK 50, ¶ 6, 75 P.3d 883, 885.

## DISCUSSION

¶ 9 We begin with the authority to collect estate tax in Oklahoma.

A tax ... is hereby levied upon the transfer of the net estate of every decedent, whether in trust or otherwise, to persons, associations, corporations, or bodies politic, of property, real, personal, or mixed, whether tangible or intangible, or any interest therein or income therefrom, by will or the intestate laws of this state, by any order setting apart property and/or granting family allowances pursuant to the probate code, by deed, grant, bargain, sale, or gift made in contemplation of death of the grantor, vendor or donor or intended to take effect in possession or enjoyment at or after such death.... Such tax shall be imposed upon the value of the net estate and transfers at the rates, under the condi-

tions, and subject to the exemptions and limitations hereinafter prescribed.

The word "transfer," as used in this article, shall be taken to include, but shall not be limited to, the passing of property, or any vested or contingent interest therein, in possession or enjoyment, present or future, by distribution, by statute, descent, devise, bequest, grant, deed, bargain, sale, or gift.

68 O.S.2001 § 802. The statute determinative of this appeal is 68 O.S.2001 § 807(A), which describes the property to be included in the decedent's gross estate for determining the value of the net estate subject to estate tax.

¶ 10 A partnership interest like the one Mr. Stuart owned in the Texas Family partnership is intangible property. When the estate at issue is that of a non-resident, Oklahoma will generally exclude intangible property.

However, in determining the value of the gross estate of a nonresident of this state, there shall be excluded all intangible personal property, except intangible personal property required to be included in such gross estate and subjected to tax under paragraph 7 of this subsection....

68 O.S.2001 § 807(A)(1). Sub-paragraph (A)(7) requires the inclusion of partnership interests owned by a non-resident decedent if the partnership owns property that is "used in connection with any established business, having a business situs in this state including, the interest of such nonresident in a partnership the business of which is conducted in the state...."

¶ 11 Although the Estate disputes the application of section 807(A)(7) as a basis for taxing the interest of the Texas Family Partnership in the Ranch LLC, there is no question that the full value of the Stuart Ranch would be subject to Oklahoma estate tax if Mr. Stuart had not transferred ownership to the Ranch LLC. Likewise, if Mr. Stuart's trust had retained ownership of the Ranch LLC, it would have been subject to Oklahoma estate tax. And, in each instance, the amount of tax paid would be the amount for which the Estate now seeks a refund. Therefore, can the Estate avoid this result by

the transfer of the Ranch LLC, from Mr. Stuart's trust to the Texas Family Partnership? The Commission correctly concluded that it could not.

¶ 12 The Estate concedes that section 807(A)(7), applies to a "non-resident decedent's interest in a *partnership* conducting business in Oklahoma." (Appellant's Brief in Chief at 18). The Estate argues, however, that the Texas Family Partnership does not conduct business in Oklahoma. To support this argument, the Estate relies on the fact that the legal entity that conducts the Stuart Ranch operations is the Ranch LLC, an Oklahoma limited liability company, and that the Ranch LLC is managed by an Oklahoma resident. The Estate concludes that the Texas Family Partnership's "mere ownership" of the Ranch LLC, does not constitute doing business in Oklahoma and relies on cases and examples involving a non-resident's ownership of stock in a corporation. Consequently, according to the Estate, only if the legal existence of the Texas Family Partnership is disregarded, can the assets of the Ranch LLC be taxed in Oklahoma. The Estate's argument relies on cases that are clearly distinguishable and ignores relevant Oklahoma law.

¶ 13 First, we do not deal here with "mere ownership." The Ranch LLC is, as its operating agreement notes, a "one-member limited liability company." The Texas Family Partnership is that member. Its membership interest is defined by Oklahoma law, which Mr. Stuart utilized when he created the Ranch LLC to preserve and protect Stuart Ranch.

¶ 14 An Oklahoma limited liability company is an unincorporated entity having one or more members, and a member is a person with an ownership interest in the LLC. 18 O.S.2001 §§ 2001(11) and (14). A membership interest is the right to the profits and losses of an LLC and the right to vote and participate in its management. 18 O.S.2001 § 2001(15). Members of an LLC conduct the business of the company unless they appoint a manager. 18 O.S.2001 § 2015. Managers are elected by a majority vote of the members and may be removed with or without cause, unless provided otherwise in the articles of organization or operating agreement. The Articles and Operating Agreement of the Ranch LLC do not provide otherwise. In fact, the Ranch LLC Operating Agreement provides: "The business and affairs of the Company shall be managed by a Manager as selected from time to time by the [Texas Family] Partnership in its sole discretion.... The Partnership may remove any Manager with or without cause at any time." [2]

¶ 15 Consequently, but for the appointment of Ms. Forst as the Ranch LLC's manager, the business of the LLC would be conducted by the Texas Family Partnership, and Oklahoma's authority to levy estate tax could not be questioned. Albeit through an Oklahoma LLC, the Texas Family partnership would, nonetheless, be conducting the business of Stuart Ranch in Oklahoma, and the terms of 68 O.S.2001 § 807(A)(7) would clearly apply. The Estate argues that the appointment of Ms. Forst changes that result, quoting *C.H. Stuart, Inc. v. Bennett,* 1980 OK 135, ¶ 13, 617 P.2d 879, 883, for the proposition that "simply appointing an agent to transact the company's business within the state [is] not doing business within the state." The *Bennett* Court found that a New York seller of costume jewelry, which employed Oklahoma residents for the purpose of soliciting sales of its jewelry to Oklahoma residents, was transacting business in Oklahoma for the purpose of Oklahoma's corporate domestication statute, a holding not supportive of the Estate's argument.

¶ 16 The actual proposition on which the Estate specifically relies is derived from the case of *Verdigris River Land Co. v. Stanfield,* 1909 OK 307, ¶ 8, 105 P. 337, 340, a case interpreting a statute in effect in Indian Territory declaring void any contract between citizens and residents of the Territory and a corporation that did not satisfy the

---

**2.** Other provisions in the Operating Agreement provide that the document may be amended by the Texas Family Partnership "at any time," that the Ranch LLC may only be dissolved on "the written consent of the Partnership," and that all profits and losses of the Ranch LLC shall be allocated to the Partnership.

filing requirements specified in the statute. The Court found that an employment contract by which the corporation appointed a resident of Indian Territory as its agent, prior to the transaction of any business in Indian Territory, and which contract was executed in Indiana did not constitute "doing business [in Indian Territory] within the meaning of the statute." *Id.* We deal here with a substantially different statutory scheme and set of facts.

¶ 17 Further, the Estate does not accurately interpret *Crescent Corp. v. Martin,* 1968 OK 95, 443 P.2d 111, when it asserts that *Martin* stands for the proposition that the formation of an employment contract with an Oklahoma resident "does *not* 'constitute the transaction of any business within this State.'" (Appellant's Reply Brief at 16). *Martin* involved the extent to which a foreign corporation was subject to personal jurisdiction in Oklahoma courts, concluding that the foreign corporation could not be sued in Oklahoma. Essential to the *Martin* Court's decision was (1) the fact that the contract in question did not call for the employee to perform any act in Oklahoma and (2) the absence of any evidence that the foreign corporation engaged in any deliberate effort to avail itself of the protection of Oklahoma laws. Neither circumstance is present in this case.

¶ 18 Nor are we persuaded by the Estate's argument that the contract of employment in this case is between an Oklahoma resident and an Oklahoma LLC. The Operating Agreement is signed on behalf of the Ranch LLC by the Texas Family Partnership, the sole member of the Oklahoma LLC. By virtue of that agreement, the Texas Family Partnership transferred operations of the Oklahoma LLC to Ms. Forst. Although the legal consequence of signing that agreement created a contract between Ms. Forst and the Ranch LLC, no other legal entity put pen to paper. More importantly, the Texas Family Partnership, not the Ranch LLC, is free to change managers and may in its sole discretion resume management of the Ranch

LLC and conduct business in this State at any time it so chooses, even if it were to receive the estate tax refund it seeks in this appeal. We do not disregard the Texas Family Partnership's legal status in reaching this conclusion; we acknowledge that status and the nature of the property interest it has been granted pursuant to Oklahoma law, which it has voluntarily retained through the agreements it has executed.

¶ 19 In the absence of any decision interpreting section 807(A)(7), the Estate's reliance on business registration and jurisdiction statutes is understandable. But the considerations involved in interpreting those statutes are not necessarily the same as the considerations relevant to the tax statutes at issue here. Presumably, the Ranch LLC pays Oklahoma sales, property and income taxes no matter how far the Texas Family Partnership can distance itself from the Oklahoma operation. Nonetheless, one need not disregard the legal existence of that partnership to conclude that those taxes "come out of the pocket" of the Texas Family Partnership, even if the Texas Family Partnership could not be sued in this State.[3] The issue relevant to section 807(A)(7) is whether, as the Estate put it, a non-resident decedent owns an interest in a partnership "conducting business in Oklahoma." For the reasons previously stated, we find that the Texas Family Partnership conducts business in Oklahoma for the purposes of section 807(A)(7) and that the Commission correctly applied that statute in denying the Estate's claim for refund of estate taxes previously paid.

¶ 20 Finally, we address the Estate's constitutional argument. We agree, as the Estate argues, that the United States Constitution requires a nexus between the taxing state and the property taxed. Although this argument seems better suited for the Texas authorities who propose to tax the Texas Family Partnership's interest in the Ranch LLC, we note that:

"[T]here is no constitutional rule of immunity from taxation of intangibles by more

---

3. Likewise unpersuasive is the Estate's circuitous argument that because companies doing business in Oklahoma are required to register in this State, the Texas Family Partnership is not doing business in Oklahoma because it has not registered.

than one State. In case of shares of stock [or limited liability company membership interests] 'jurisdiction to tax' is not restricted to the domiciliary State. Another State which has extended benefits or protection or which can demonstrate 'the practical fact of its power' or sovereignty as respects the shares ... may likewise constitutionally make its exaction."

*State Tax Comm'n of Utah v. Aldrich,* 316 U.S. 174, 182, 62 S.Ct. 1008, 1012, 86 L.Ed. 1358 (1942) (internal citation omitted).

¶ 21 Notwithstanding the Estate's argument to the contrary, we cannot ignore the similarity between the circumstances in this case and those in *Aldrich,* in which the United States Supreme Court affirmed a Utah estate tax on the transfer of a non-resident decedent's stock in a Utah corporation. *Aldrich* held that although Utah law was not required to accomplish the stock transfer, a sufficient nexus existed because the corporate existence, shareholder rights and authority to transfer stock in the corporation were derived from Utah law.

¶ 22 The Estate would have us focus on the Texas Family Partnership and Texas law in analyzing *Aldrich.* But it is not the existence of the Texas Family Partnership that is being taxed; it is the transfer of property the partnership owns that is being taxed. As relevant to this appeal, the nature of that property is a question of Oklahoma law. To preserve the Stuart Ranch intact and ensure its continued operation, Mr. Stuart availed himself of Oklahoma law and created the Ranch LLC. To paraphrase the Court in *Aldrich,* the Ranch LLC owes its existence to Oklahoma law; Oklahoma law defines the nature and extent of the interest of the member (Texas Family Partnership) in that LLC; Oklahoma law affords protection for those rights; and, Oklahoma has power over the transfer by the Ranch LLC of its membership to the Texas Family Partnership. *See Aldrich,* 316 U.S. at 180, 62 S.Ct. at 1011. If Mr. Stuart had the right to transfer his membership interest in the Ranch LLC to the Texas Family Partnership, that right "stems from [Oklahoma] law. It finds its ultimate source in the authority which [Oklahoma] has granted. It is indeed a benefit which [Oklahoma] has bestowed. For [Oklahoma] alone may constitutionally ask a return." *Id.* The constitutionally required nexus exists, and Oklahoma may lawfully collect estate tax on the transfer of the Ranch LLC at Mr. Stuart's death.

## CONCLUSION

¶ 23 The Commission's order is legally correct and supported by substantial evidence in the record. We, therefore, affirm the order of the Oklahoma Tax Commission.

¶ 24 **AFFIRMED.**

GOODMAN, P.J., and WISEMAN, J., concur.